**Wendell E. TAYLOR, Plaintiff and Appellant,**

v.

**The ESTATE OF Grant TAYLOR, deceased, Esther Taylor, Darren G. Taylor, and John Does 1 through 5, Defendants and Respondents.**

No. 880136–CA.

Court of Appeals of Utah.

Feb. 15, 1989.

A. Howard Lundgren (argued), Salt Lake City, for plaintiff and appellant.

L.S. McCullough, P. Bryan Fishburn (argued), Callister, Duncan & Nebeker, Salt Lake City, for defendants and respondents.

Before BILLINGS, JACKSON and ORME, JJ.

## OPINION

ORME, Judge:

Wendell Taylor appeals the trial court's entry of summary judgment against him. Wendell argues that 1) summary judgment was inappropriate due to unresolved issues of material fact regarding the validity of his deceased brother's alleged will; 2) a document favorable to him should be given effect as his brother's will, even though it does not strictly comply with the Utah Probate Code; and 3) the trial court erred in ordering Wendell to pay a portion of defendants' attorney fees. We affirm in large part, but remand for reassessment of one aspect of the court's judgment.

## FACTS

In January 1984, Grant Taylor loaned a sum of money to his brother, plaintiff Wendell Taylor. At the time of the loan, Grant had been divorced for about one month from his wife of more than forty years, defendant Esther Taylor. On June 30, 1984, Grant dictated a document to a second brother, Noel Taylor, providing that the loan to Wendell be forgiven upon Grant's death. Noel typed this document and Grant signed it in the presence of Noel and Noel's wife, Geraldine. Noel then signed the document as a witness and filed it away. Geraldine did not sign the document at that time.

Shortly after executing the June 30 document, Grant, who had been ill with cancer, worsened considerably. On August 30, 1984, he executed a document entitled "Last Will and Testament." In this document, Grant made no provision for his former wife, Esther, nor did he mention the debt owed by Wendell or the June 30 document forgiving the debt. The will recited

that the bulk of Grant's estate go to a trust, created the same date, in favor of his children.

Grant and Esther remarried on September 21, 1984, approximately ten months after their divorce. The trust Grant established on August 30 was immediately amended to include Esther as a beneficiary. At the time of the remarriage, Grant's cancer had rendered him unable to walk or speak audibly and he died five days later. Shortly thereafter, his estate was informally probated pursuant to the August 30 will.

Following Grant's death, efforts were made to obtain repayment from Wendell of the money Grant had loaned him. Unaware of the June 30 document forgiving the debt, Wendell complained of these efforts to Noel, at which time Noel informed Wendell of that document. However, the document was not located and delivered to Wendell until early 1985. In October of that year, Wendell filed this action to invalidate the previously probated August 30 document and give testamentary effect to the terms of the original June 30 document forgiving repayment of the loan made by Grant.

Wendell claimed that the June 30 document was actually Grant's last valid will, the August 30 document being a product of duress or undue influence. Wendell attached to his complaint a copy of the June 30 document bearing only the signatures of Grant and Noel. Based on the fact that the purported will bore the signature of only one witness, defendants' counsel filed a motion to dismiss Wendell's complaint. Two days before defendants' motion to dismiss was to be argued, Wendell filed an affidavit in which he claimed that the document attached to his complaint was not an accurate copy of the June 30 document. Attached to his affidavit was another copy of the document bearing the additional witness signature of Geraldine Taylor. Accordingly, defendants' motion to dismiss was continued as it only addressed the validity of a document bearing one witness signature.

Defendants' counsel promptly deposed Noel and Geraldine Taylor. Geraldine testified that she saw Grant sign the June 30 document, but did not sign it herself until approximately eight months after Grant's death. Based on this testimony, defendants filed a motion for summary judgment seeking dismissal of Wendell's complaint and an award of attorney fees. Wendell filed an opposing memorandum addressing only the merits of his complaint. On February 20, 1986, the trial court heard oral argument on defendants' motion and granted summary judgment in their favor, but held the fee request in abeyance pending an affidavit substantiating the amount of fees reasonably incurred.

Defendants' counsel filed an affidavit with the court detailing the attorney fees incurred by defendants and seeking an award of $10,037.25. Wendell objected to the award of any fees, but filed no opposing affidavit. The trial court awarded defendants attorney fees in the amount of $5,000. The court's order did not specify the legal basis for the award nor how the court arrived at that precise amount.

On appeal, Wendell raises, through newly retained counsel, three challenges to the trial court's actions. First, Wendell claims the court erred in ruling that the June 30 document forgiving the debt owed to Grant is invalid under Utah Code Ann. § 75-2-502 (1978), which requires that a legally enforceable will be signed by two witnesses "in the testator's presence." Wendell urges us to adopt a standard of "substantial compliance" and hold the document to be valid. Secondly, Wendell argues that disputed issues of material fact surround the validity of the purported will executed by Grant on August 30, 1984, pursuant to which Grant's estate was informally probated and has now been distributed. Wendell argues that summary disposition of this aspect of his complaint was error due to these factual disputes. Lastly, Wendell claims there is no legal basis for awarding defendants even a portion of their attorney fees and, alternatively, that the award must be reversed due to the trial court's failure to enter appropriate findings to support the award.

## SECTION 75–2–502 AND SUBSTANTIAL COMPLIANCE

■ Section 75–2–502 of the Utah Probate Code provides that a valid will "shall be signed by at least two persons ... in the testator's presence and in the presence of each other."[1] Wendell concedes that the June 30 document does not strictly comply with this section since only Noel signed the document, as a witness, in Grant's presence. However, Wendell argues that the document substantially complies with § 75–2–502 and is therefore valid because Geraldine saw Grant sign the document and thereafter signed it herself, albeit after Grant's death.

In urging us to adopt a standard of substantial compliance, Wendell makes two points. First, he cites cases from other jurisdictions applying such a standard in construing similar probate code provisions. *See, e.g., In re Estate of Perkins*, 210 Kan. 619, 504 P.2d 564, 568 (1972); *In re Estate of Rudd*, 140 Mont. 170, 369 P.2d 526, 530 (1962). Second, he relies on Utah Code Ann. § 75–1–102 (1978), which provides that the probate code shall be "liberally construed." Wendell's reliance on these authorities is unhelpful to his case. Even if we were to adopt a standard of substantial compliance with probate code provisions,[2] the circumstances surrounding the execution of the June 30 document would nonetheless require a ruling adverse to Wendell.

A standard of substantial compliance would forgive no more than "[s]light or trifling departures from technical requirements...." *Perkins*, 504 P.2d at 568. The requirement that two witnesses to a will sign it in the presence of the testator is not a mere technicality serving no purpose beyond frustrating legitimate testamentary intent. Such a provision is designed to prevent the substitution of a surreptitious will. The testator must be able to see the witnesses attest the will; or, to speak with more precision, their relative position to him at the time they are subscribing their names as witnesses must be such that he may see them, if he thinks it proper to do so, and satisfy himself by actual view that they are witnessing the very paper he signed to be his last will.

*In re Estate of Weber*, 192 Kan. 258, 387 P.2d 165, 170 (1963).

Wendell can hardly claim the execution of the June 30 document departs only slightly from the requirements of § 75–2–502. It is undisputed that only one witness, Noel, signed the document in Grant's presence. Geraldine, the second witness, signed it more than eight months after Grant's death. This amounts to an absolute failure to comply—strictly or substantially—with even the most liberal construction of § 75–2–502. Very simply, the document was not signed by two witnesses in the testator's presence, but only one. Thus, it is not a valid will.

Cases from other jurisdictions, applying statutes similar to § 75–2–502, support our conclusion. For example, the Kansas Supreme Court, purportedly applying a standard of substantial compliance, rejected its application to facts which, in our minds, call for it far more than the present facts. *See In re Estate of Weber*, 387 P.2d at 167–68. The testator in *Weber* was ill and on his way to the hospital when he stopped at his bank and asked its president to come out to his car to help execute a will. The president instructed three employees to go to a bank window near the testator's car so they could witness the signing of the will, which the testator did after waving to the

1. We note that the Uniform Probate Code, on which the Utah Probate Code is largely patterned, no longer requires witnesses to a will to sign in the testator's presence. However, the Utah Code has not adopted the change and retains this requirement. *See* Editorial Board Comment, Utah Code Ann. § 75–2–502 (1978).

2. Pre-code law is to the contrary. *See In re Alexander's Estate*, 104 Utah 286, 139 P.2d 432, 434 (1943) ("[T]he right to dispose of property by will is governed and controlled entirely by statute. Such statutes are mandatory, and unless strictly complied with, the instrument, as a will, is void."). Although we need not decide the question in this case, it is likely the "strict compliance" maxim no longer has vitality. *See* Utah Code Ann. § 75–1–102(1) (1978) (probate code "shall be liberally construed and applied").

employees. The president then took the signed will into the bank and the employees signed it as witnesses. Through the bank window, the testator could have observed the witnesses signing something, but he would not have been able to see the document being signed. *Id.* at 167–68.

The will was held to be invalid. In response to the argument that the signing constituted substantial compliance with a statute requiring witnesses to sign in the testator's presence, the Kansas Supreme Court stated: "To hold that the requirements of the statute were complied with in the instant case would subvert the purpose and intent of the statute and would amount to a disregard of its substance." *Id.* at 170.

We recognize that the result reached in *Weber* arguably frustrates legitimate testamentary intent. We are also mindful that cases like Weber probably prompted the drafters of the Uniform Probate Code to altogether abandon the formality that witnesses must sign "in the presence of" the testator. However, the Utah Legislature has seen fit, in its collective wisdom, to preserve this requirement, apparently believing its benefit in preventing the substitution of surreptitious wills outweighs its potential unfairness. That judgment is appropriately one for the Legislature rather than this court. Even if we might see the merits of legislation differently, we must apply the law as it exists absent its unconstitutionality. We would disregard the substantive requirement of § 75–2–502 if we held that Geraldine's signing of the June 30 document eight months after Grant's death "substantially complied" with the requirement that two witnesses sign in his presence. Accordingly, we agree with the trial court that the June 30 document is invalid as a testamentary document given the clearly expressed requirement of § 75–2–502.

## WENDELL'S STANDING TO CHALLENGE THE AUGUST 30 WILL

■ Wendell argues that, in any event, disputed issues of material fact exist as to the validity of the August 30 will, thereby precluding summary judgment in favor of defendants. Specifically, Wendell claims Grant lacked testamentary capacity,[3] or was subject to undue influence by Esther and others, when he executed the August 30 document and the subsequent trust amendment. In order to raise such a challenge to an informally probated will, Wendell must have standing under Utah Code Ann. §§ 75–1–201(20), 75–3–401(1) (1978).

Section 75–3–401(1) provides, with our emphasis:

A formal testacy proceeding is litigation to determine whether a decedent left a valid will. A formal testacy proceeding may be commenced *by an interested person* filing a petition ... in which he requests that the court, after notice and hearing, enter an order probating a will, *or a petition to set aside an informal probate of a will....*

Thus, Wendell may challenge the August 30 will only if he is an "interested person." Section 75–1–201(20) provides that the term "interested person"

includes heirs, devisees, children, spouses, creditors, beneficiaries, and any others having a property right in or claim against a trust estate or the estate of a decedent.... It also includes persons having priority for appointment as personal representative and other fiduciaries representing interested persons. The meaning as it relates to particular persons may vary from time to time and must be determined according to the particular purposes of, and matters involved in, any proceeding.

While § 75–1–201(20) does not exhaustively define every individual who is an "interested person," except for fiduciaries every example provided is someone with a financial interest founded upon or defeated by the challenged will.

Wendell's action is based on the theory that the June 30 document is valid as a will and forgives a debt he otherwise owes Grant's estate. We have held that the June 30 document is invalid as a will.

---

**3.** *See* Utah Code Ann. § 75–2–501 (1978).

Thus, Wendell is not a devisee nor is he otherwise entitled to assert any claim against Grant's estate by reason of that document. Moreover, Wendell would stand to take nothing under the laws of intestacy even if the August 30 will were invalidated, *see* Utah Code Ann. §§ 75–2–102, –103 (1978), so he is not an "heir." *See* Utah Code Ann. § 75–1–201(17) (1978). Thus, on the record before us, Wendell, although Grant's brother, is only the estate's *debtor* and has no "property right in or claim against" Grant's estate, regardless of the August 30 document's validity. Accordingly, Wendell's relationship to Grant's estate is insufficient to qualify Wendell as an interested person under § 75–1–201, and we agree that Wendell lacks standing to challenge the August 30 document.[4]

## ATTORNEY FEES

The final issue Wendell raises relates to the trial court's awarding defendants a portion of their attorney fees on summary judgment. Wendell argues that there is no legal basis for requiring him to pay those fees, and even if there is such a basis, the award here must be reversed due to the trial court's failure to enter appropriate findings of fact.

■ At the outset, we note that findings of fact are unnecessary in connection with summary judgment decisions. Utah R.Civ. P. 52(a).[5] *See, e.g., Weber v. Springville City,* 725 P.2d 1360, 1363 (Utah 1986); *Do-*

*ver Elevator Co. v. Hill Mangum Invs.,* 766 P.2d 424, 426 n. 4 (Utah Ct.App.1988). The reason is quite obvious in light of the proper role played by findings of fact.

Findings of fact serve two important purposes: (1) informing the parties of the trial court's analysis, and (2) providing a basis for review by the appellate court. *See, e.g., Dover Elevator Co.,* 766 P.2d at 426. Where the parties have stipulated to the facts or the evidence in the record is otherwise undisputed, the parties have essentially obviated the need for findings, *see id.* at 426, or at least rendered harmless the trial court's failure to enter them. *See, e.g., Kinkella v. Baugh,* 660 P.2d 233, 236 (Utah 1983). This is because a resolution based on undisputed facts is "not one involving resolution by the trial court of conflicting testimony," *Schroeder v. Horack,* 592 S.W. 2d 742, 744 (Mo.1979) (en banc), and an appellate court therefore has "the same means as the trial court had of reaching a correct conclusion of law...." *Stiles v. Brown,* 380 So.2d 792, 794 (Ala.1980).

If summary judgment is proper under Utah R.Civ.P. 56, the material facts are, by definition, undisputed and there are no facts which the court has to *find.* Although it may be unusual for the facts concerning attorney fees to be undisputed, the rule is no different where the subject of the summary judgment is a claim for attorney fees.[6] Accordingly, we hold that the

---

**4.** Even if Wendell was successful in attacking the validity of the August 30 will, from all that appears Wendell would still be obligated to repay the loan to the personal representative of Grant's estate, for the benefit of those entitled to take by intestacy. *See* Utah Code Ann. §§ 75–2–101 to –112 (1978).

**5.** The current version of Rule 52 provides "[t]he court shall, however, issue a brief written statement of the ground for its decision on all motions granted under [Rule 56] when the motion is based on more than one ground." Utah R.Civ.P. 52(a). *See also Dover Elevator Co. v. Hill Mangum Invs.,* 766 P.2d 424, 426 n. 4 (Utah Ct.App.1988).

**6.** There are some cases which seem to hold that findings of fact are a prerequisite for *any* award of attorney fees. *See, e.g., Cabrera v. Cottrell,* 694 P.2d 622, 625 (Utah 1985) ("On a number of

occasions, we have held that attorney fees should be awarded on the basis of evidence and that findings of fact should be made which support the award."). Interestingly, none of the cases cited in support of the quoted statement in *Cabrera* actually concerns the need for findings. *See Bangerter v. Poulton,* 663 P.2d 100, 103 (Utah 1983) ("award ... of attorney's fees and certain costs is not supported by any evidence in the record and is reversed"); *Hal Taylor Assocs. v. Unionamerica, Inc.,* 657 P.2d 743, 750–51 (Utah 1982) (proper to refuse award of fees where no evidence concerning fees presented); *Paul Mueller Co. v. Cache Valley Dairy Ass'n,* 657 P.2d 1279, 1287–88 (Utah 1982) (error to allocate attorney fees on basis of counsel's statement during argument rather than actual evidence). Moreover, the Court in *Cabrera* earlier noted that the findings requirement applied generally rather than invariably. *Cabrera,* 694 P.2d at 624 ("An award of attorneys fees must gener-

trial court did not err in failing to enter findings of fact in support of its summary judgment awarding defendants a portion of their fees, and turn to the merits of the court's disposition.

■ In order to affirm a summary judgment, we must find that the material facts are undisputed and that the moving party was entitled to judgment as a matter of law. *See, e.g., C.J. Realty, Inc., v. Willey*, 758 P.2d 923, 929 (Utah Ct.App.1988). Specifically, where attorney fees are awarded to a prevailing party on summary judgment, the undisputed, material facts must establish, as a matter of law, that (1) the party is entitled to the award and (2) the amount awarded is reasonable. *See, e.g., Lockhart Co. v. Anderson*, 646 P.2d 678, 681 (Utah 1982).

We first address the factual record. As concerns defendants' entitlement to an award of fees, Wendell admitted in his affidavit that the wrong document was attached to his complaint. Concerning the reasonableness of the fees claimed, the detailed fee affidavit submitted by defendants was not controverted or objected to. Thus, there was no dispute of material *fact* regarding the fees requested or their reasonableness.

However, to affirm this award we must also conclude, in light of the undisputed facts, that a *legal* basis exists for the award. Our task is complicated somewhat by the fact that the exact legal basis the court had in mind in awarding fees does

not appear in the court's judgment. No transcript was made of the hearing during which the issue of fees was argued,[7] nor is there a written memorandum informing this court and the parties of the trial court's legal view of the matter.[8] However, it is appropriate that we affirm if the trial court's decision can be sustained on any proper legal basis. *See, e.g., Buehner Block Co. v. UWC Assocs.*, 752 P.2d 892, 895 (Utah 1988).

In reviewing the memorandum submitted in support of their motion, we see that defendants urged three legal theories on the trial court. First, defendants argued that the "inexcusable" neglect of Wendell or his counsel in mistakenly attaching to the original complaint a copy of the June 30 document, bearing only the signature of one witness, entitles them to attorney fees under Utah R.Civ.P. 11. Second, defendants argued that the inherent power of the court to assess fees incident to controlling the proceedings before it was a sufficient basis for the award. Finally, defendants sought to premise the award on the "bad faith" statute, Utah Code Ann. § 78–27–56 (1987). We consider these theories in reverse order.

■ Section 78–27–56 provides:

In civil actions, where not otherwise provided by statute or agreement, the court may award reasonable attorney's fees to a prevailing party if the court determines that the action or defense to

---

ally be made on the basis of findings of fact supported by the evidence and appropriate conclusions of law.").

Other cases recognize that findings are unnecessary to support an award of fees where the relevant facts are undisputed. *See Freed Fin. Co. v. Stoker Motor Co.*, 537 P.2d 1039, 1040 (Utah 1975) (attorney fees may be awarded on summary judgment if the record contains a stipulation, an unrebutted affidavit, or evidence supporting the reasonableness of the award); *South Sanpitch Co. v. Pack*, 765 P.2d 1279, 1283 (Utah Ct.App.1988) (uncontroverted testimony concerning amount of reasonable fee provides adequate basis for fee award). While it may seem so at first blush, the opinion in the recent case of *Graco Fishing v. Ironwood Exploration, Inc.*, 766 P.2d 1074, 1079 (Utah 1988), is not to the contrary. In *Graco Fishing*, our Supreme Court remanded an award of fees granted on summa-

ry judgment because the evidence surrounding the award was disputed, and the record was otherwise unclear as to the basis for the trial court's ruling. In the present case, as will be seen, the facts are not in dispute; the basis for the court's ruling, while not articulated, is obvious; and no purpose would be served by a remand for findings.

7. *See Briggs v. Holcomb*, 740 P.2d 281, 283 (Utah Ct.App.1987) ("Although consistently making a record of all proceedings imposes a greater burden on the trial court ... it is impossible for an appellate court to review what may ultimately prove to be important proceedings when no record of them has been made.").

8. *See*, note 5, *supra*. Rule 52, as phrased at the time of the trial court's decision in this case, did not have such a requirement.

the action was without merit and not brought or asserted in good faith.

The parties concede the trial court concluded that Wendell had not acted in bad faith, a conclusion supported by the record, and therefore § 78–27–56 does not provide a legal basis for the award. *See Cady v. Johnson*, 671 P.2d 149, 151–52 (Utah 1983) (even though adequate legal research would have demonstrated action was frivolous, failure to do research does not constitute a lack of good faith; lack of good faith for purposes of § 78–27–56 turns on subjective intent).

■ Likewise, the "inherent power" theory, even if we were to embrace it, does not support this award.[9] The federal cases relied on by defendants are limited to narrowly defined situations such as bad faith or willful disobedience of a court order by the party assessed, *see, e.g., Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765–68, 100 S.Ct. 2455, 2463–65, 65 L.Ed.2d 488 (1980), circumstances which are lacking here.

■ Finally, we turn our attention to Rule 11, which provides, in part, as follows:

The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension,

modification, or reversal of existing law. . . . If a pleading, motion, or other paper is signed in violation of this rule, the court . . . shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include . . . a reasonable attorney's fee.[10]

This rule, which mirrors Fed.R.Civ.P. 11, "requires some inquiry into both the facts and the law before the paper is filed; the level of inquiry is tested against a standard of reasonableness under the circumstances." 5 C. Wright & A. Miller, Federal Practice and Procedure § 1333 at 177 (1987 Supp.). This objective approach allows sanctions to be imposed in a greater range of circumstances than did the pre-amendment, subjective "bad faith" approach. *See, e.g., Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1536–38 (9th Cir.1986); *Davis v. Veslan Enters.*, 765 F.2d 494, 497 (5th Cir.1985). *Cf. Cady v. Johnson*, 671 P.2d 149, 151–52 (Utah 1983) (pre-amendment case employing subjective "bad faith" analysis).

■ We are not cited to a reported Utah case involving sanctions under Rule 11 in its post-amendment form. *See note 10, supra*. However, in a number of cases this court has imposed sanctions pursuant to our rules, including R. Utah Ct.App. 40(a) which imposes a similar duty on litigants and their counsel.[11] *Brigham City v. Man-*

---

**9.** We note that § 78–27–56 and Utah R.Civ.P. 37 allow Utah courts to assess attorney fees in the precise circumstances in which the federal courts have resorted to an "inherent power" theory. We have no occasion in this case to consider whether that doctrine might nonetheless have some applicability in Utah's state courts.

**10.** This version of Rule 11 was adopted in 1985. The prior version, which spoke in terms of an attorney's belief that there was "good ground" to support a pleading, did not impose a duty of inquiry. Nor did it expressly authorize the award of attorney fees for violation of the rule, providing instead for "appropriate disciplinary action." While there is disagreement between the parties as to which version of Rule 11 applies in this case, the effective date of the amended rule is September 4, 1985, making it applicable to this case. Although it appears defendants relied on the pre-amendment ver-

sion of Rule 11 before the trial court, we are not precluded from *affirming* on the basis of the Rule as amended and as actually applicable to this case. *See Buehner Block Co. v. UWC Assocs.*, 752 P.2d 892, 895 (Utah 1988).

**11.** Rule 40(a) is to this court what Rule 11 is to the trial courts. Both rules require attorneys and parties to reasonably inquire as to the facts and law before a document is signed and filed. Rule 40(a) is substantially similar to Rule 11 and provides in part:

The signature of an attorney or a party constitutes a certificate that the attorney or the party has read the motion, brief, or other paper; that to the best of the attorney's or the party's knowledge, information, and belief, formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law. . . . If a motion, brief, or other paper is signed in violation of this rule, the court . . .

*tua Town*, 754 P.2d 1230, 1236–37 (Utah Ct.App.1988); *Porco v. Porco*, 752 P.2d 365, 369 (Utah Ct.App.1988); *Backstrom Family Ltd. Partnership v. Hall*, 751 P.2d 1157, 1160 (Utah Ct.App.1988); *Barber v. The Emporium Partnership*, 750 P.2d 202, 203 (Utah Ct.App.1988); *O'Brien v. Rush*, 744 P.2d 306, 310 (Utah Ct.App.1987). These cases establish that Rule 40(a) imposes a duty to investigate the factual and legal basis of an appeal or appellate document before filing. *See Backstrom Family Ltd. Partnership*, 751 P.2d at 1160; *O'Brien*, 744 P.2d at 310. Subjective intentions are essentially irrelevant; the determination of whether the rule has been violated is made on an objective basis. *Id.* Except to the extent that a somewhat less forgiving approach should perhaps be employed at the appellate level,[12] we find that this analysis is equally applicable to the similarly worded Rule 11.[13]

Whether specific conduct amounts to a violation of Rule 11 is a question of law. *See, e.g., Golden Eagle Distrib. Corp.*, 801 F.2d at 1538. If a Rule 11 violation is shown, an appropriate sanction is mandated, and we will affirm the particular sanction imposed by the trial court, including the reasonableness of any

fee award, absent an abuse of discretion. *Id. See also Dixie State Bank v. Bracken*, 764 P.2d 985, 988 (Utah 1988). We are mindful that Rule 11 gives trial courts great leeway to tailor the sanction to fit the requirements of the particular case. *See, e.g., Davis v. Veslan Enters.*, 765 F.2d at 501.

Applying the foregoing analysis to this case, the award of fees to defendants must be affirmed. Wendell admits in his affidavit that the wrong document was originally attached to his complaint. Clearly, a reasonable inquiry at that time by Wendell or his attorney, as contemplated by Rule 11, would have disclosed that the document contained the signature of only one witness. This discovery should have brought two concerns to mind: (1) such a document is simply invalid as a will, and (2) a mistake had been made in attaching the wrong document, which should have been corrected before the complaint was filed.[14] By failing to conduct this inquiry, Wendell, or at least his counsel, violated Rule 11. This neglect caused defendants to incur legal expense in researching the validity of an irrelevant document and preparing a motion to dismiss based thereon. This is precisely the kind of situation the revised Rule

---

shall impose ... an appropriate sanction, which may include ... a reasonable attorney fee.

**12.** The basis for this distinction was noted in *O'Brien*, albeit in the context of a comparison with § 78–27–56: "[S]ince a party has already been to court once and has had the benefit of one ruling, the decision to appeal should be reached only after careful consideration by the party and counsel." 744 P.2d at 310.

**13.** Further consideration of *Cady v. Johnson*, 671 P.2d 149 (Utah 1983), highlights the importance of the amendment to Rule 11. *See also* note 10, *supra*. In *Cady*, which arose prior to the amendment, the trial court awarded fees pursuant to Utah Code Ann. § 78–27–56, which provides for attorney fees where an action is without merit *and* "not brought or asserted in good faith." The Supreme Court agreed that the claim had "no legal basis" and therefore was "without merit." 671 P.2d at 151. The Supreme Court disagreed, however, with the trial court's view that a lack of good faith had been established "because had plaintiffs researched the issue as instructed at pre-trial conference, they

would have discovered they had no valid claim...." *Id.* at 152. The Supreme Court held that such "conduct does not rise to lack of good faith," *id.*, which it defined in terms of purely subjective intentions. *Id.* at 151. Had amended Rule 11 applied in *Cady*, the analysis would no doubt have been different and the imposition of a fee sanction affirmed instead of reversed. Very simply, counsel's failure to research the validity of his client's claim meant counsel had not made "reasonable inquiry" into whether the claim was "warranted by existing law." Utah R.Civ.P. 11.

**14.** We are somewhat perplexed as to how two such documents came into existence, one bearing only the signature of Noel and one bearing the additional signature of Geraldine. This is especially perplexing considering the fact that Geraldine claims to have signed the original document after Grant's death but before this action was commenced and, supposedly, before "the" document was delivered to Wendell. The record offers no satisfactory explanation, a factor which may well have influenced the court's imposition of Rule 11 sanctions on Wendell personally.

11 is intended to address, and we hold that the facts of this case mandate an appropriate sanction.

■ Defendants filed with the trial court a lengthy affidavit reciting that the fees claimed were reasonable and detailing the work performed on this case, the date it was performed, and the billable rates of the attorneys performing the work. Confining his opposition to legal arguments concerning the propriety of any fee award, Wendell did not file an opposing affidavit challenging the claimed fees or their reasonableness. We have reviewed the affidavit and conclude that imposition of $5,000 in attorney fees as a sanction for violating Rule 11 is not an abuse of discretion. It was appropriate for the trial court to consider and include the fees incurred by defendants in researching the validity of a one-signature will; preparing their motion to dismiss; and researching, drafting the motion for, and obtaining an order imposing the Rule 11 sanctions. *See Duncan v. WJLA–TV, Inc.*, 106 F.R.D. 4, 6 (D.D.C. 1984) (Rule 11 sanction included attorney fees incurred in obtaining the sanction).[15] The fees attributable to these efforts exceed $5,000.00.[16] We accordingly find a legal basis and undisputed factual support for an award of at least $5,000 and accordingly we affirm it.[17]

■ However, we find no factual support, undisputed or otherwise, for imposing the sanction solely on Wendell. Rule 11 gives the trial court discretion to impose attorney fees on a party or the party's attorney, but that discretion should be meaningfully exercised. It may well be that Wendell himself is primarily responsible for the appearance of the wrong document. *See* note 14, *supra.* On the other hand, reasonable *legal* inquiry by his counsel would have disclosed the obvious invalidity of a will witnessed by only one person. We do not prejudge the question, but are constrained to remand the matter for the limited purpose of determining whether the $5,000 sanction should be imposed on Wendell, his attorney, or both. *Cf. Porco v. Porco,* 752 P.2d 365, 369 n. 6 (Utah Ct.App.1988) ("The trial court is authorized to allocate responsibility for payment of defendant's costs and fees on appeal, in whole or in part, to plaintiff or to plaintiff's attorney as it deems appropriate.").

## CONCLUSION

For the foregoing reasons, the judgment appealed from is in all respects affirmed, except as concerns imposition of the Rule 11 sanction solely on Wendell. We remand for the limited purpose of re-evaluating that question. If the facts are undisputed and offered by stipulation, proffer, or affidavit, the court may of course decide the question on motion. Otherwise, evidence

---

15. Allowing the recovery of attorney fees incurred in obtaining attorney fees under Rule 11 is consistent with the approach employed in bankruptcy cases, *see, e.g., In re Nucorp Energy, Inc.,* 764 F.2d 655, 658–59 (9th Cir.1985); *Rose Pass Mines, Inc. v. Howard,* 615 F.2d 1088, 1093 (5th Cir., 1980); *In re Tolan,* 41 B.R. 751, 755 (D.Tenn.1984); in civil rights cases, *see, e.g., Lund v. Affleck,* 587 F.2d 75, 77 (1st Cir.1978); *Urbina v. Quern,* 482 F.Supp. 1013, 1016 (D.Ill. 1980); and in class actions. *See Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.,* 382 F.Supp. 999, 1012–13 (D.Penn.1974). *But see Dorfman v. First Boston Corp.,* 70 F.R.D. 366, 374 (D.Penn. 1976). This approach is especially appropriate in the Rule 11 context. If a party entitled to Rule 11 relief were required to bear the expense of securing it, the important policy embodied in

Rule 11 would be vindicated only in cases where it made economic sense, i.e., where the amount of the sanction would clearly exceed the expense of securing it. It is obviously preferable to have the offending party bear the expense of enforcement.

16. Fees not included in the award were primarily attributable to efforts which would have been necessary even if the correct document had been initially attached to the complaint, including discovery about the circumstances of Geraldine's signature and preparation of the successful motion for summary judgment.

17. Because defendants did not cross-appeal, we have no occasion to consider whether a larger award would be sustainable on the facts of this case.

should be taken and suitable findings of fact and conclusions of law entered. The parties shall bear their own costs of this appeal, including attorney fees.[18]

BILLINGS and JACKSON, JJ., concur.

18. This may seem inconsistent with the point made in note 15, *supra,* as well as the spirit of cases holding that when attorney fees are awarded below they should be awarded to that same party if successful on appeal. *See, e.g., Dixon v. Stoddard,* 765 P.2d 879, 881 (Utah 1988); *Management Servs. Corp. v. Development Assocs.,* 617 P.2d 406, 409 (Utah 1980). Our decision in this regard is based on the fact that the pertinent parts of defendants' appellate brief are all but identical to the memorandum in support of their request for fees filed below. In view of our holding, defendants have already been compensated for this work, and to allow a double recovery for the same work would be unfair. Additionally, the defendants have given only cursory treatment in their brief to an analysis of Rule 11 as amended. Our resolution of this aspect of the appeal is essentially a product of our own efforts rather than defendants' labors for which additional compensation ought to be forthcoming.