913 P.2d 761 (1996)
In the Matter of the ADOPTION OF R.N.L., a minor child.
John A. GIFFEN, Appellant,
v.
R.W.L., Appellee.
No. 940658-CA.
Court of Appeals of Utah.
March 14, 1996.
John A. Giffen, St. George, Appellant pro se.
James I. Watts, Salt Lake City, for Appellee.
Before BENCH, BILLINGS and GREENWOOD, JJ.

*762 OPINION
BENCH, Judge:
John A. Giffen, an attorney, appeals the trial court's imposition of sanctions against him pursuant to Rule 11 of the Utah Rules of Civil Procedure. The trial court sanctioned Mr. Giffen for filing an amended petition for adoption on behalf of his clients, the Hankses. The trial court found that Mr. Giffen was deficient in failing to make reasonable inquiry into existing law and for pleading information in the amended petition that was not well grounded in fact. We affirm.

FACTS
Mr. Giffen was contacted by an individual in California on behalf of a pregnant mother who wanted to place her unborn child for adoption. The mother ultimately selected the Hankses as the adoptive parents and they agreed to provide financial support for the mother during her pregnancy. The mother came to Utah in July 1993. She was accompanied by her sixteen-month-old child, R.N.L. When the mother miscarried, Mr. Giffen informed her that the financial support would cease unless she would allow the Hankses to adopt R.N.L. The mother agreed and R.N.L. began living with the Hankses.
Mr. Giffen filed an adoption petition on behalf of the Hankses in Fifth District Court, pleading that the natural parents would consent to the adoption of R.N.L. Because the natural mother was temporarily residing in Salt Lake City, Mr. Giffen arranged for a Salt Lake attorney, Paul Halliday, Jr., to obtain the mother's consent in Third District Court. That case was assigned to Judge Homer Wilkinson.
When Mr. Halliday and the mother arrived in Third District Court on July 29, 1993, Judge Wilkinson was out of town and Judge Glenn Iwasaki agreed to hear the matter. During the hearing, the court became concerned about the voluntariness of the mother's consent. The mother stated that she thought the adoption was "a temporary custody thing," which she was doing because she was homeless and thought it would be best for her child. She also stated that she wanted the Hankses to pay for counseling and therapy for her. Judge Iwasaki refused to take the consent until there could be further communication between the birth parents and the Hankses, concluding that "there was no way we can do this today."
Mr. Halliday then spoke with the mother in the hall and they decided to go ahead with the consent. They proceeded to the courtroom of Judge John Rokich, who agreed to hear the matter in view of Judge Wilkinson's absence. Without knowledge of the hearing before Judge Iwasaki, Judge Rokich took the mother's consent.
In early August, R.W.L., the child's natural father, contacted Mr. Giffen and told him that he would not consent to the adoption. The child's father retained attorney James Watt to seek a dismissal of the adoption petition. The father's motion to terminate the adoption was filed in early September, along with a motion for sanctions pursuant to Rule 11 of the Utah Rules of Civil Procedure. A hearing on both motions was set for September 8, 1993, in Fifth District Court. Because Mr. Giffen had not received proper notice of that hearing, it was rescheduled for September 27, 1993.
On September 21, 1993, Mr. Giffen filed an amended adoption petition with only one change. Rather than alleging that the natural father would consent to the adoption, the amended petition averred that an action would be initiated to terminate the natural father's parental rights. Mr. Giffen made arrangements with an attorney in California to file an action to terminate the natural father's parental rights based upon nonsupport. That action was filed in California on September 24, 1993.
On September 27, 1993, Judge Shumate heard the natural father's motion to terminate the adoption and motion for sanctions. Witnesses for both sides testified and several affidavits were considered for the limited purpose of determining whether sanctions were warranted against Mr. Giffen.[1] The *763 court ordered the petition for adoption dismissed and imposed sanctions upon Mr. Giffen for the natural father's costs and attorney fees incurred after September 8, 1993.
Mr. Giffen subsequently filed a motion pursuant to Rule 59 of the Utah Rules of Civil Procedure alleging that irregularity in the proceedings or abuse of discretion prevented a fair trial. After a hearing, the trial court upheld the sanctions previously imposed, but denied additional sanctions. On appeal, Mr. Giffen argues that the trial court's order imposing Rule 11 sanctions against him was improper, and alternatively, the amount of sanctions was excessive.

STANDARD OF REVIEW
When reviewing Rule 11 determinations, "we review the trial court's findings of fact under a clearly erroneous standard... and the trial court's determination of the type and amount of sanction to be imposed under an abuse of discretion standard." Schoney v. Memorial Estates, Inc., 863 P.2d 59, 62 (Utah App.1993). We review the trial court's conclusion that Rule 11 was violated under a correction of error standard. Id. We grant a measure of discretion to the trial court's application of the legal principle to the facts. See State v. Pena, 869 P.2d 932, 938-39 (Utah 1994).

ANALYSIS

I. Rule 11 Sanctions
Rule 11 provides, in pertinent part:
The signature of an attorney or party constitutes a certification by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.
Utah R.Civ.P. 11 (emphasis added).
The determination of whether conduct violates Rule 11 is made on an objective basis. Taylor v. Estate of Taylor, 770 P.2d 163, 171 (Utah App.1989). The trial judge in the instant case articulated several reasons for imposing Rule 11 sanctions against Mr. Giffen. The trial court found Mr. Giffen deficient in failing to make reasonable inquiry into existing law, and also, for making allegations in the amended petition that were not well grounded in fact. Specifically, the trial court found that Mr. Giffen failed to obtain a preplacement adoptive study; failed to comply with the Interstate Compact on the Placement of Children; knew or should have known the natural mother's consent was flawed; knew the natural father would not consent to the adoption; and failed to make a reasonable inquiry as to whether the natural father's parental rights were terminable.
The trial court found that Mr. Giffen failed to obtain a preplacement adoptive study for the adoption prior to the child's placement with the adoptive parents, as required by Utah Code Ann. § 78-30-3.5 (Supp.1993). Mr. Giffen admitted at the evidentiary hearing that he had not obtained the preplacement study because of time constraints. Section 78-30-3.5 also provides that the court may authorize temporary placement of a child in the potential adoptive home pending the completion of the adoptive study. However, Mr. Giffen failed to comply with this requirement as well. A reasonable inquiry of the applicable statute by Mr. Giffen would have revealed the necessity of the preplacement study or temporary placement order.
*764 Utah law requires the adoption petition to indicate whether the child was born in another state, and if so, the petition must state that the requirements of the Interstate Compact on Placement of Children have been met. Utah Code Ann. § 78-30-15.1 (1995). The purpose of the Interstate Compact is to inform state authorities of the proposed adoption so they can protect the child's interest by ascertaining and evaluating the circumstances of the proposed placement. Utah Code Ann. § 62A-4a-701 (1993). While both petitions stated the child was born in Sacramento, California, neither petition mentioned the Interstate Compact or compliance therewith. Mr. Giffen made no effort to comply with the Interstate Compact. Again, a reasonable inquiry of the appropriate statutes would have revealed that compliance with the Interstate Compact was required.
The trial judge also held that Mr. Giffen was in violation of Rule 11 for proceeding with the adoption after he knew or should have known that the natural mother's consent was flawed. Mr. Giffen did not directly take part in the hearings held in Salt Lake City before Judges Iwasaki and Rokich. However, the evidence supports the court's conclusion that Mr. Giffen knew of alleged deficiencies in the mother's consent when he filed the amended petition.
The record contains an affidavit of the natural mother. She asserted that following her miscarriage, Mr. Giffen told her the Hankses would no longer pay her living expenses. He also told her that she would have to repay the travel, living, and medical expenses already expended, and that she would be "out on the street" unless she agreed to let the Hankses adopt R.N.L. She asserted that she only consented to the adoption because of financial pressure and duress from Mr. Giffen. She also stated that subsequent to giving her consent, she requested that Mr. Giffen terminate the adoption proceedings and return the child to her. However, she stated Mr. Giffen refused to do so when requested.
The mother's affidavit was dated September 2, 1993, and the mailing certificate attached thereto indicates that a copy was mailed to Mr. Giffen on that same day. Therefore, Mr. Giffen knew, prior to filing the amended petition on September 21, 1993, that the mother claimed her consent was given under financial pressure and duress, and that she wanted the adoption proceeding terminated. Nevertheless, in the amended petition, Mr. Giffen represented that the natural mother would consent to the adoption. His pleading was therefore not well grounded in fact as required by Rule 11.
Finally, the trial court also found that Mr. Giffen knew the natural father refused to consent to the adoption, and also that Mr. Giffen had failed to make reasonable inquiry as to whether the natural father's parental rights were terminable. However, we need not address whether the trial court could sanction Mr. Giffen for lack of reasonable inquiry as to the interests of the natural father in view of the errors of law and pleading heretofore mentioned.
In Taylor, sanctions against an attorney were upheld after the attorney erroneously submitted a will to probate with only one signature and attached the wrong document to a pleading. Taylor, 770 P.2d at 170-71. These errors caused opposing counsel to incur costs of researching, preparing, and arguing a motion to dismiss as well as a motion for Rule 11 sanctions. This court held that the attorney should have known that the will, bearing only one signature, was invalid. Thus, sanctions were appropriate to compensate the opposing party for having to defend the flawed action. Id.
Similarly, the natural father in this case was forced to retain counsel to challenge and defend against an adoption that Mr. Giffen reasonably should have known was defective. Thus, Rule 11 sanctions were appropriate.

II. Sanction Amount
"Rule 11 gives trial courts great leeway to tailor the sanction to fit the requirements of the particular case." Taylor, 770 P.2d at 171. Because Mr. Giffen failed to comply with the requirements of a valid adoption and because he knew of the natural mother's challenge to her consent, we see no abuse of discretion in the trial court's order *765 awarding the natural father his costs and attorney fees incurred after September 8, 1993. See Schoney v. Memorial Estates, Inc., 863 P.2d 59, 62 (Utah App.1993) (holding no abuse of discretion awarding costs and attorney fees when sanctions were warranted).

CONCLUSION
We therefore affirm the sanctions imposed by the trial court and award the natural father his costs and attorney fees incurred on appeal. We remand the case to the trial court for a determination of the amount of the award on appeal.
BILLINGS and GREENWOOD, JJ., concur.
NOTES
[1] Although unclear from the trial transcript, the parties agreed at oral argument before this court that the affidavits of the natural mother and others were admitted into evidence for the limited purpose of determining whether sanctions were warranted against Mr. Giffen.