In the Matter of the following Issuers, their Securities, Affiliates or Successors, and/or Entities subsequently organized by them, including H & B Carriers, Inc., et al., CAPITAL GENERAL CORPORATION, Plaintiffs and Appellant,

v.

DEPARTMENT OF BUSINESS REGULATION, Utah Securities Division, Defendants and Appellees.

No. 910196–CA.

Court of Appeals of Utah.

Feb. 10, 1992.

Rehearing Denied March 9, 1992.

---

David H. Day, Phillip B. Shell (argued), Day & Barney, Murray, for plaintiffs and appellants.

R. Paul Van Dam, State Atty. Gen., David N. Sonnenreich (argued), Asst. Atty. Gen., Tax & Business Regulation Div., Salt Lake City, for defendants and appellees.

Before GARFF, JACKSON and ORME, JJ.

## OPINION

JACKSON, Judge:

Capital General Corporation (CGC) appeals the trial court's order which affirmed suspension of all secondary stock trading exemptions of forty-six corporate entities formed by CGC[1] without registration pursuant to the Utah Uniform Securities Act, Utah Code Ann. § 61–1–1 to –30 (1986), and imposed sanctions under Rule 11 of the Utah Rules of Civil Procedure. We affirm.

## ISSUES

CGC's brief acknowledges that our decision in *Capital Gen. Corp. v. Dep't of Business Regulation*, 777 P.2d 494 (Utah App.), *cert. denied*, 781 P.2d 878 (Utah 1989) (hereinafter *Amenity* ), regarding the stock of Amenity, Inc. controls certain issues. But CGC argues that the following issues require new treatment regarding the stock of forty-six other corporations which it formed:[2] (1) whether the trial court properly applied the doctrine of collateral estoppel, (2) whether CGC's transfers of stock were not sales but good faith gifts exempt from registration, (3) whether statutory authority exists for the Securities Division to suspend all trading exemptions including those of stock transferees, and (4) whether the trial court abused its discretion in imposing Rule 11 sanctions.

## FACTS

The parties present this appeal on undisputed facts. The Securities Advisory

---

1. CGC appeared before the Division of Securities to challenge the summary order as an "interested" party under Utah Code Ann. § 61–1–14(3) (1989), and on review as a "person aggrieved by a final order of the executive director," under Utah Code Ann. § 61–1–23 (1989).

2. The forty-six corporate entities were: H & B Carriers, Inc., Florida Growth Industries, Inc., Macaw, Inc., Longhorn Enterprise, Inc., Koala Corporation, Yahwe Corporation, Star Dolphin, Inc., Jackal, Inc., Hyena Capital, Inc., Gopher Inc., Flamingo Capital, Inc., Egret, Inc., Cetacean Industries, Inc., Bonito, Inc., Alpaca, Inc., Zeus Enterprise, Inc., Tamarind, Inc., Saber, Inc., Radar, Inc., Quiescent, Inc., Vanadium, Inc., Upsilon, Inc., Why Not?, Inc., Bestmark, Inc., Missouri Illinois Mining, Inc., Dogmatic, Inc., Mystic Industries, Inc., Highland Manufacturing, Inc., Kowtow, Inc., Noble Industries, Inc., Oryan Capital Corporation, Pegasus Star Enterprise, Inc., Showstoppers, Inc., Hightide, Inc., Grandeur, Inc., Fantastic Industries, Inc., Jugglar, Inc., Xebec Galleon, Inc., Golden Home Health Care Equipment Centers, Inc., Nighthawk Capital, Inc., Resources Exploration Data, Inc., Instrument Development Corporation, Panther Industries, Inc., Owl Enterprises, Inc., Quail, Inc., and GBS Technologies Corporation.

Board adopted the following pertinent findings of fact:

8. H & B Carriers, Inc. was incorporated under the laws of the State of Utah on July 1, 1982. That entity was initially known as Y Travel; Jerry W. Peterson and Mr. Yeaman had incorporated Y Travel and the registered agent of that entity was Ms. Peterson.

9. Similar to Amenity, Inc., H & B Carriers, Inc. was initially capitalized when Capital General Corporation transferred $2,000 to it in exchange for authorized common stock. Similar to Amenity, Inc., Capital General Corporation thereafter gifted, to approximately 700 to 1,000 individuals, a unit of 100 shares of the stock it had acquired. Many of the donees were residents of Utah.

10. None of H & B Carriers, Inc. securities were registered with the division at the time those securities were gifted. Further, neither that corporation nor its securities were subject to an exemption from registration requirements pursuant to filing with the division at that time.

11. Sparing detail, the December 1, 1987 Petition sets forth factual allegations substantially similar to those identified above as to the mode of incorporation, the subsequent acquisition and gifting of stock in the forty-five (45) other companies under review. In each case, the essential transaction consisted of the initial transfer of securities for a relatively small amount of money and the gifting of those securities to numerous individuals. In certain instances, the gifted securities were subsequently traded on the secondary market. None of the corporate entities in question or the securities which were gifted were registered with the division and no exemptions from registration requirements were ever issued as to those securities.

Upon petition by the Securities Division, all transactional exemptions applicable to the shares of all forty-six Utah corporations formed by CGC were ordered suspended by the executive director. The order was affirmed by an administrative law judge, the Securities Advisory Board, and the lower court. CGC had transferred the corporate shares without requesting either registration or exemption. CGC asserted that the stock transfers were "gifts" and therefore exempt from regulation.

## ANALYSIS

Our analysis will assume arguendo that *Amenity* does not provide collateral estoppel regarding the issues now presented. Here, the Board determined that CGC's transfers of the shares were sales within the meaning of Utah Code Ann. § 61–1–7 (1986):

It is unlawful for any person to offer or sell any security in this state unless it is registered under this chapter or the security or transaction is exempted under § 61–1–14.

■ In *Amenity*, we held that transfers of Amenity stock under an identical scheme were sales and not gifts. The pertinent language is the definition of an offer or sale as including a "disposition ... of a security for value." Utah Code Ann. § 61–1–13(15)(a) (1986). Value is present even though the benefits flow indirectly from the marketplace rather than directly from the transferees. *Amenity*, 777 P.2d at 497. By distributing shares, CGC transformed H & B Carriers, Inc. and the other forty-five corporations into publicly held corporations ripe for acquisition. Thus, the Board's determination that CGC's "gifting" program constituted sales for value was reasonable and rational.

■ CGC claims certain testimony regarding "good faith" distinguishes this case from *Amenity*. "Good faith gifts" are excluded from the definition of "sale" under Utah Code Ann. § 61–1–13(15)(a) (1986). The Board ruled that CGC's transfers were not good faith gifts. CGC does not cite us to the record nor any precedent other than *Amenity*. Mr. Yeaman, CGC's president, testified regarding his "good faith" efforts not mentioned in *Amenity*. He testified that he talked to two attorneys and called the Utah Securities Division regarding gifts of stock and was told that the law applied only to sales. On direct examination he said, "we called and asked what

the provisions were for making gifts." On cross-examination he stated "as I remember it, it was just a general discussion about making gifts and what states' views generally is [sic] about gifting stock." Because this evidence is so general, vague and uncorroborated, it has little weight or relevance. As in *Amenity,* the Board found that CGC's main intent, based on what was actually done with the stock, was to circumvent the statutory registration requirements, not to make gifts for the sake of generosity. Further, evidence of economic self-interest in promoting the same corporate stock scheme as a regular practice belies gratuity and innocence. Accordingly, the Board's conclusion that the stock transfers were not good faith gifts was reasonable and rational.

■ CGC's final challenge to the order is that the Securities Division did not have statutory authority to issue the summary order. The order stated that "pursuant to Utah Code Ann. Section 61–1–14(2), all transactional exemptions that are applicable, or may hereafter become applicable, are suspended." The Board concluded that "the distribution of the securities in question constitutes the unregistered sale of a security violative of Section 61–1–7."

Subsection (1) of 61–1–14 describes the *securities* which are exempted from sections 61–1–7 (registration before sale) and 61–1–15 (filing of sales literature). Subsection (2) of 61–1–14 describes the *transactions* which are exempted from the same requirements. Subsection (3) empowers the division by order to "deny or revoke" exemptions with respect to "a specific security, transaction or series of transactions" and sets forth the hearings procedure which was followed in this matter. Thus, because neither registration nor exemption were in place, the transactions in these specific securities were unlawful.

Section 61–1–7, registration before sale, provides: "It is unlawful for any person to offer or sell any security in this state unless it is *registered* under this chapter or the security or transaction is *exempted* under Section 61–1–14." Since CGC had not registered the stock and could not claim

any exemption, the transactions were violative of section 61–1–7. Section 61–1–20 authorizes enforcement action by the Securities Division. "Whenever it appears to the division that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of this chapter or any rule or order under this chapter," it may issue a show cause order to cease and desist or bring a court action for relief. *See* Utah Code Ann. § 61–1–20(1)(a)–(d) (1986). The summary order stated:

> The entry of an order is in the public interest because the offer or sale of securities, which have not been registered and are not the subject of an appropriate underlying exemption from registration, deprives investors of the statutory protections afforded by the Utah Uniform Securities Act.

Thus, as in *Amenity,* the Securities Division had statutory power to act and substantially complied with the statutory procedure. *See Amenity,* 777 P.2d at 498.

The Securities Division filed a motion for Rule 11 sanctions consisting solely of attorney fees. The trial court entered an award of $1,395.00. We review the award under an abuse of discretion standard. We have reviewed the trial court's action and cannot say that the trial court abused its discretion in making the award. *See Taylor v. Estate of Taylor,* 770 P.2d 163 (Utah App. 1989).

Accordingly, we affirm on all issues.

GARFF and ORME, JJ., concur.