**Brian M. BARNARD, Plaintiff and Appellant,**

v.

**Toni M. SUTLIFF and Utah State Bar, Defendants and Appellees.**

No. 900241.

Supreme Court of Utah.

Dec. 18, 1992.

John Pace, Brian M. Barnard, Salt Lake City, for plaintiff and appellant.

Carman E. Kipp, Robert H. Rees, Salt Lake City, for defendants and appellees.

ZIMMERMAN, Justice:

Brian M. Barnard appeals from a district court order and judgment finding that he violated rule 11 of the Utah Rules of Civil Procedure and imposing a sanction of $4,381. The Third District Court found that Barnard had failed to research its jurisdiction properly before filing a suit seeking to enjoin a bar disciplinary proceeding against him. Barnard contends that he did not violate rule 11 because he made a reasonable inquiry into the status of the law and his research revealed that Utah law is unclear on the jurisdictional question. Because we find that the district court's legal bases for imposing the sanction are in error, we vacate its order and remand.

In April of 1989, the Utah State Bar received a complaint alleging that Barnard had committed ethical violations while representing a client. In handling the complaint, the Office of Bar Counsel followed the *Procedures of Discipline of the Utah State Bar* (codified in Utah Code Jud.Admin. ch. 14) [hereinafter *Procedures of Discipline* ] and forwarded a copy of the complaint to Barnard. After trying for four months to resolve the matter informally between the complainant and Barnard, the Office of Bar Counsel sent Barnard a complaint letter. The letter informed him that the allegations would be reviewed by a screening panel of the Ethics and Disciplinary Committee.[1] The letter also stated that he would have the opportunity to appear before the screening panel if the panel

---

1. The five-member screening panel is selected from among the members of the Ethics and Disciplinary Committee, which consists of sev- enteen members of the Bar and four members of the public. *Procedures of Discipline*, rule IV(a), (c).

determined that a private reprimand was warranted or before a hearing committee panel if the screening panel determined that a formal complaint was warranted. *See Procedures of Discipline*, rule IX(b).

On August 2nd, Barnard telephoned Toni Sutliff, Associate Bar Counsel, to learn the names of the screening panel members who would be assigned his case. Although the accounts of what happened during that telephone conversation differ, both parties agree that Sutliff informed Barnard that his case had not yet been assigned to a specific panel. According to Barnard, Sutliff further stated that she would not disclose the names of the panel members even after Barnard's case had been assigned to a specific panel, thus giving him no opportunity before the hearing to determine whether any panel member might be biased against him. Sutliff neither admits nor denies making this latter comment. In any event, within several hours after their conversation, Barnard filed suit in district court to enjoin the Bar from proceeding until it disclosed the names of the screening panel members assigned to his case, and a constable served Sutliff with Barnard's summons and complaint.

After receiving Barnard's complaint, the Bar filed a motion to dismiss, claiming that the district court lacked jurisdiction to hear the case and that only the supreme court could review bar disciplinary proceedings. Sometime after the action was filed, the Bar assigned the complaint against Barnard to a specific screening panel, and before the panel hearing was to be held, the Office of Bar Counsel provided Barnard with the names of the panel members. After Barnard received these names, he unilaterally dismissed his suit. *See* Utah R.Civ.P. 41(a)(1)(i). In his notice of dismissal, Barnard stated that the Bar had satisfied both of his grievances: It had informed him of the names of the screening panel members and of the procedures it uses in assigning a case to a screening panel.

In January of 1990, four months after Barnard withdrew his complaint, the Bar filed a motion seeking sanctions for violation of Utah Rule of Civil Procedure 11. The Bar alleged, inter alia, that Barnard had breached his rule 11 duty to make a reasonable prefiling inquiry into the law to determine whether the district court had jurisdiction to enjoin a bar disciplinary proceeding. The Bar asserted that this court has sole supervisory authority over bar disciplinary proceedings and the implementation of bar rules.

Barnard responded with an affidavit and a memorandum. He again asserted that Sutliff had told him she would not release the names of the panel members prior to the hearing. Barnard further asserted that he filed the suit in good faith, that he made a good faith inquiry into the law, and that he had personal knowledge of the facts before filing the complaint. Barnard conceded that he might have erred by filing the suit in district court, but he insisted that such an error would not merit sanctions. He explained that he had successfully filed two earlier suits in district court against the Bar pertaining to the practice of law. Barnard acknowledges that both of the earlier suits would, at first blush, appear to be within the exclusive jurisdiction of this court. *See* Utah Const. art. VIII, § 4. However, in both suits, the district court denied motions to dismiss for lack of jurisdiction and ruled on the merits. Thus, he was led to believe that the district court would be a proper forum for his present suit. Barnard did not describe any steps he undertook to research the law underlying the jurisdictional question.

The district court granted the rule 11 motion, reasoning that "it is no defense to suggest that the jurisdiction of the District Court has been improperly invoked on prior occasions as a justification for an improper filing a third time." The court also stated:

[H]ad Mr. Barnard made a reasonable inquiry into the status of the law pertaining to issues of jurisdiction regarding the nature of the controversy reflected in the present suit, ... it would have been clear that the District Court was not the ap-

propriate forum within which to seek relief. On that basis, this Court determines that the plaintiff has failed to make a proper inquiry, and has therefore violated Rule 11....

The court then ordered the Bar to submit a statement of the attorney fees it incurred in defending against Barnard's suit and informed Barnard that he could object to the statement when it was received.

After the Bar submitted the statement, Barnard filed a document entitled "Objection," challenging not only the fees specified in the statement, but also the court's findings on the merits of the rule 11 motion. In support of his challenge to the merits, Barnard filed a second affidavit in which he outlined for the first time the steps he took in conducting his legal research. Barnard said that before filing suit, he reviewed the *Rules for Integration and Management of the Utah State Bar* and the *Procedures of Discipline* to determine if there was any rule that required actions challenging the conduct of the Bar to be brought only in the Utah Supreme Court. He also said that he researched the constitutional and code provisions governing jurisdiction and the Utah Supreme Court cases and Pacific Digest topics dealing with lawyer discipline. He said that he concluded from his research that no constitutional provision, statute, law, or rule clearly deprives the district court of jurisdiction to grant injunctive and declaratory relief against the Bar's conduct of a lawyer discipline matter. In addition to his affidavit, Barnard submitted eight affidavits from other practicing Utah attorneys who, at Barnard's request, also researched the issue of whether a district court has jurisdiction to grant an injunction against the Bar's procedures in a lawyer discipline matter. Each affiant stated that he could not find any law denying district court jurisdiction.

The Bar moved to strike Barnard's "Objection" and affidavits to the extent that they did not bear on the question of the reasonableness of the attorney fees sought by the Bar as sanctions. The Bar argued that this material was directed to an issue already decided—whether rule 11 had been violated—rather than to the issue before the court—the amount of the sanction. The district court agreed and struck the contested material because it was untimely and irrelevant to the issue at bar. Then, rejecting his objections to the amount of the Bar's attorney fees, the trial court awarded the Bar $4,321.

Barnard filed a motion for new trial pursuant to subparts (6) and (7) of Utah Rule of Civil Procedure 59(a). Utah R.Civ.P. 59(a)(6), (7). He asked the court to reconsider the question of whether he had violated rule 11 and resubmitted the stricken affidavits. The court denied his motion, stating that it was an improper attempt by Barnard to have the court reconsider its decision to impose sanctions. Barnard now appeals.

■ We first address the standard of review. This court has yet to address comprehensively the standard of review for trial court rulings under rule 11. However, the federal courts have taken three distinct approaches to this issue. *See* Christopher A. Considine, Note, *Rule 11: Conflicting Appellate Standards of Review and a Proposed Uniform Approach*, 75 Cornell L.Rev. 727, 734–37 (1990) [hereinafter Considine]; Louis Greco, Note, *Standard of Appellate Review of Rule 11 Decisions*, 58 Fordham L.Rev. 251, 255–60 (1989). The wording of Utah's rule 11 is identical in all material respects to the federal version; therefore, we survey the federal courts' approaches to determine their relative persuasiveness. Although we are not bound by these federal decisions, they may help us to develop our interpretation of the rule. *See Pate v. Marathon Steel Co.*, 692 P.2d 765, 767 & n. 1 (Utah 1984).

One approach followed by federal appellate courts uses three standards of review in considering a trial court's rule 11 determinations. *See, e.g., West Coast Theater Corp. v. City of Portland*, 897 F.2d 1519,

1526 (9th Cir.1990); *Kurkowski v. Volcker,* 819 F.2d 201, 203 n. 8 (8th Cir.1987); *Zaldivar v. City of Los Angeles,* 780 F.2d 823, 828 (9th Cir.1986). The trial court's findings of fact are reviewed under the clearly erroneous standard. The trial court's ultimate conclusion that rule 11 was violated and any subsidiary legal conclusions are reviewed under the correction of error standard. And the trial court's determination as to the type and amount of sanction to be imposed is reviewed under the abuse of discretion standard. *E.g., Zaldivar,* 780 F.2d at 828.

Another approach taken by federal appellate courts in rule 11 cases uses two standards of review. *See, e.g., International Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of America (Airline Div.) v. Association of Flight Attendants, AFL–CIO,* 864 F.2d 173, 176 (D.C.Cir.1988); *Donaldson v. Clark,* 819 F.2d 1551, 1556 (11th Cir.1987) (en banc); *Westmoreland v. CBS,* 770 F.2d 1168, 1174–75 (D.C.Cir. 1985). Under this approach, an abuse of discretion standard is used in reviewing factual determinations as well as the type and amount of sanctions. The legal conclusion that rule 11 was violated is reviewed for correctness. *E.g., Westmoreland,* 770 F.2d at 1174–75.

The third approach taken by federal appellate courts in rule 11 cases uses a single standard, abuse of discretion, in reviewing all trial court determinations. *See, e.g., Kale v. Combined Ins. Co.,* 861 F.2d 746, 758 (1st Cir.1988); *Thomas v. Capital Sec. Serv., Inc.,* 836 F.2d 866, 872 (5th Cir.1988) (en banc). The United States Supreme Court said that it was adopting the abuse of discretion standard to review all rule 11 determinations in *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405, 110 S.Ct. 2447, 2460, 110 L.Ed.2d 359 (1990). However, the Court's opinion is confusing and, when parsed, appears to endorse the use of three standards of review, depending on the nature of the rule 11 determination. It has been noted that while the *Cooter & Gell* Court claimed to expressly reject the three-standard approach,

the Court adopted some elements of the de novo and clearly erroneous standards. The Court concluded that "[a] district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." [496 U.S. at 405, 110 S.Ct. at 2461.] The decision in *Cooter & Gell* has thus sent mixed signals. On the one hand, the Supreme Court has reasoned that the abuse of discretion standard applies to all aspects of the Rule 11 determination, but on the other hand, the Court has suggested that sanctions decisions which breach the de novo or clearly erroneous standards also violate the abuse of discretion standard. In essence, the decision in *Cooter & Gell* may have implicitly adopted the same tripartite standard of review it expressly rejected.

Sam Johnson et al., *The Proposed Amendments to Rule 11: Urgent Problems and Suggested Solutions,* 43 Baylor L.Rev. 648, 661–62 (1991).

Even if we could make some sense of the conflicting statements in *Cooter & Gell,* we decline to adopt the abuse of discretion standard as the sole standard of review of a trial court's rule 11 findings. We think that an abuse of discretion standard would vest too much discretion in the trial courts on questions of law. The resulting indeterminacy would create great uncertainty in an area that already suffers from ambiguity in the governing standard of conduct. *See* Considine at 737–42. *See generally* Melissa L. Nelken, *Sanctions Under Amended Federal Rule 11—Some "Chilling" Problems in the Struggle Between Compensation and Punishment,* 74 Geo. L.J. 1313, 1333 (1986).

As for the two-standard approach, the use of an abuse of discretion standard for factual questions seems inconsistent with the Utah case law definition of "abuse of discretion." For example, in *State v. Hamilton,* 827 P.2d 232 (Utah 1992), we said that abuse of discretion meant that a ruling was beyond the "limits of reasonability."

*Id.* at 239–40. In *Hamilton,* we applied the abuse of discretion standard to review a trial court's balancing of interests in determining the admissibility of evidence under Utah Rule of Evidence 403. In that balancing context, a review for reasonableness makes sense. However, when applied to a factual determination, a review for reasonableness would seem to have little independent meaning. We simply cannot conceive of a factual finding's being "reasonable" if it is against the "clear" or "great" weight of the evidence, the test usually applied in reviewing factual findings. *E.g., Bountiful v. Riley,* 784 P.2d 1174, 1175 (Utah 1989); *Reid v. Mutual of Omaha Ins. Co.,* 776 P.2d 896, 899–900 (Utah 1989); *see* Utah R.Civ.P. 52(a).

On the whole, we conclude that Utah appellate courts should use the three-standard approach in reviewing a trial court's rule 11 findings. It uses understood standards of review, accords appropriate discretion to the trial judge in making the difficult judgment as to what an appropriate sanction may be, upholds findings of fact unless contrary to the clear weight of the evidence, and preserves the role of the appellate court in defining what constitutes a violation of the legal standards set by rule 11.

The approach we adopt today is consistent with the rule 11 jurisprudence that Utah appellate courts have developed thus far. For example, in *Clark v. Booth,* 821 P.2d 1146, 1149–50 (Utah 1991), we reviewed findings of fact in a rule 11 case using the clearly erroneous standard. And in *Taylor v. Estate of Taylor,* 770 P.2d 163, 171 (Utah Ct.App.1989), the court of appeals reviewed the legal conclusion that rule 11 had been violated for correctness. *See also Rimensburger v. Rimensburger,* 841 P.2d 709, 710 (Utah Ct.App.1992) (amended opinion); *Jeschke v. Willis,* 811

P.2d 202, 204 (Utah Ct.App.1991). Finally, in *Taylor,* 770 P.2d at 171, and in *Capital General Corp. v. Department of Business Regulation,* 837 P.2d 568, 570–71 (Utah Ct.App.1992), the court of appeals used the abuse of discretion standard in reviewing the type and amount of sanctions imposed under rule 11.

Returning to the present appeal, we first consider whether the trial court abused its discretion in denying Barnard's motion for a new trial and refusing to consider the resubmitted affidavits. Barnard moved for a new trial under the grounds specified in subparts (6) and (7) of rule 59(a): "[i]nsufficiency of the evidence to justify the verdict or other decision, or that it is against law" and "[e]rror in law." Utah R.Civ.P. 59(a)(6), (7). In support of his challenge to the trial court's previous ruling, he resubmitted an affidavit detailing the steps he took to research the jurisdictional issue and affidavits from other attorneys averring that based upon their research, the jurisdictional issue was unclear.

As a threshold matter, we find that the trial court's decision not to consider the affidavits was not an abuse of discretion. The affidavits clearly constitute evidence. Under rule 59(a), newly proffered evidence is admissible only under subpart (4), which requires that the proffered evidence be "newly discovered" and such that the proponent "could not, with reasonable diligence, have discovered and produced at the trial." *Id.* 59(a)(4). Even if Barnard had proceeded under this subpart, he surely would not have met these standards.[2] Having decided that the trial court properly declined to consider the affidavits, we cannot say that the judge's decision denying Barnard's motion for new trial was beyond the bounds of reasonability. *See Hamilton,* 827 P.2d at 239–40. Consequently, we

---

**2.** We note that Barnard could have resubmitted the affidavits under rule 60(b)(1), which allows the court, "upon such terms as are just" and "in the furtherance of justice," to relieve a party from an order for "mistake, inadvertence, surprise, or excusable neglect." Utah R.Civ.P. 60(b)(1). Barnard did not proceed under this rule, and on appeal, we will not construe a motion for new trial as a rule 60(b) motion because the trial court should have the first opportunity to consider the issue on rule 60(b) grounds.

conclude that the trial court did not abuse its discretion.

■ We now turn to the merits of Barnard's challenge to the trial court's original order finding that Barnard had violated rule 11 because he failed to make a reasonable inquiry into the law. We first review the applicable law. Rule 11 is violated when an attorney fails, inter alia, to make a reasonable inquiry to assure that the complaint is "well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law...." Utah R.Civ.P. 11. Rule 11 does not impose a duty to do perfect or exhaustive research. The appropriate standard is whether the research was objectively reasonable under all the circumstances. *See* Fed.R.Civ.P. 11, Advisory Committee's Note, *reprinted in* 97 F.R.D. 165, 198 (1983).

■ Nor does rule 11 require the attorney to reach the correct legal position from the research. It is enough that the attorney's reading of the law is a reasonable one. Thus, once an attorney forms a reasonable opinion after conducting appropriate research, the mere fact that the attorney's view of the law was wrong cannot support a finding of a rule 11 violation. *See Zaldivar*, 780 F.2d at 830–31; *Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1013–14 (2d Cir.1986). However, the reasonableness of an attorney's view of the law is not a subjective standard. Utah's rule 11 is patterned after the federal rule 11 promulgated in 1983, which replaced the previous subjective good faith standard with a more objective standard. 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil 2d* § 1335, at 58–60 (1990). In short, the attorney's view must be objectively reasonable when it is compared to existing law.

In the instant case, the trial court essentially relied on two rationales for finding that Barnard did not make a reasonable inquiry into the law. First, the court held that Barnard's knowledge that two other district courts had determined that they had jurisdiction to hear similar matters was irrelevant. Second, the court determined that Barnard could not have made a reasonable inquiry because it concluded, based on its review, that the law is clear that jurisdiction lies in our court for all lawyer discipline matters. Because both of these grounds are, in effect, legal conclusions, we review them for correctness. *See Rimensburger*, 841 P.2d at 710.

■ We find that the district court erred in holding that Barnard's knowledge of the two other cases, both of which he personally participated in, was irrelevant to the issue of whether he made a reasonable inquiry into the law. Although the rule 11 duty to investigate the law is premised on the need for actual research, the personal knowledge of how coordinate courts have resolved similar issues is relevant in deciding whether an attorney made a reasonable inquiry into the law. As we explained above, whether an attorney reasonably investigated the law is to be determined under *all the circumstances*. If we were to discount personal knowledge so easily, we effectively would be requiring attorneys to disregard their experience and repeat their legal research for each new case, no matter how similar or close in time the new case is to previous cases. Moreover, as Justice Holmes noted, the law is the "prophec[y] of what the courts will do in fact." Oliver Wendell Holmes, *The Path of the Law*, 10 Harv.L.Rev. 457, 460–61 (1896). The law is seldom crystal clear, and where other judges have agreed with an attorney's view of the law, that fact hardly can be said to be irrelevant to the objective reasonableness of the attorney's conception of the law.

■ We also find that the district court erred in concluding that the law was clear that jurisdiction did not lie in district court and then determining that because the law was clear, Barnard must not have reasonably inquired into the law. First, the reasonable inquiry analysis does not hinge

solely on whether the law is clear. The focus should be on what the attorney actually did in researching the law. Second, and perhaps more important, we disagree with the trial court that the law is clear that jurisdiction lies in this court for the type of action Barnard brought against the Bar.

Under the *Rules of Integration and Management of the Utah State Bar*, actions against lawyers grounded on allegations of unethical conduct must be pursued according to the procedures set forth in the *Procedures of Discipline. See* R.Int. & Mngmt. (C)12. These procedures plainly indicate that the Bar and its committees are the first and exclusive forum for investigative actions of alleged unethical conduct by an attorney. *Procedures of Discipline*, rules VIII, IX, XI, XII. Appeals from these lawyer discipline proceedings are to this court only. Utah Const. art. VIII, § 4; Utah Code Ann. § 78-2-2(3)(c); *Procedures of Discipline*, rule XIV; *see also* Utah Code Ann. § 78-51-19. Section 78-2-2(3)(c) also grants this court exclusive appellate jurisdiction over interlocutory appeals in lawyer discipline matters.

However, the law does not state clearly where original jurisdiction lies for actions challenging the general procedures of the Bar. Additionally, Barnard's injunctive suit asserted that the Bar was violating his constitutional rights to due process. This claim could be interpreted as seeking an extraordinary writ in the nature of mandamus, which does not necessarily fall into the category of interlocutory appeals covered by section 78-2-2(3).

In sum, the trial court relied on erroneous bases to find that Barnard violated his rule 11 duty to reasonably investigate the law. Therefore, we must reverse the trial court's order granting rule 11 sanctions against Barnard.

■ We now clarify the jurisdictional law for future cases. The district court did not, in fact, have jurisdiction over this matter. Any challenge to the Bar's general

procedures that arises out of a specific disciplinary matter, no matter how denominated, effectively amounts to an interlocutory appeal or a request for an extraordinary writ in that proceeding and should be brought only to this court. Under section 78-2-2(3)(c), this court has exclusive appellate jurisdiction over all such matters, including suits such as the one brought by Barnard. Likewise, only this court has the rule-making power over the practice of law and the procedures of the Bar. Utah Const. art. VIII, § 4. Therefore, challenges to the general procedures of the Bar, even though not arising from a specific lawyer discipline case, must be filed in this court as petitions for modification of the rules. No other court has original jurisdiction to consider the procedures and rules of the Bar, whether by way of suit or other petition for relief.

We vacate the order and judgment of sanctions and remand the matter to the district court. The court may still impose sanctions if it makes appropriate findings consistent with this opinion.

HOWE, A.C.J., and DURHAM, J., concur.

STEWART, J., concurs in the result.

HALL, Chief Justice: (Concurring and Dissenting).

I agree that this court has exclusive jurisdiction to hear challenges to Bar disciplinary matters. This is evident by reason of the unambiguous terms of Utah Code Ann. § 78-2-2(3)(c) and the likewise unambiguous rule-making authority afforded by article VIII, section 4 of the Utah Constitution.

I therefore do not concur in vacating the judgment of the trial court that was based on the conclusion, plainly supported by the facts, that Barnard had not made a reasonable inquiry into the law. In fact, it was not until after the court ruled that he was subject to sanctions for a violation of rule 11 that Barnard revealed the extent of his research. Even then, he failed to review

and apprise the court of the content of the dispositive statutory and constitutional provisions hereinabove set forth.