Lorin PENNINGTON, Plaintiff, Appellant, and Cross–Appellee,

v.

ALLSTATE INSURANCE CO., Burns Chiropractic, Dr. David R. Trimble, D.C., Dr. Dale Bennett, D.C., Dr. Bryson Smith, Dr. Joan Balcome, St. Benedict's Hospital, and Associates in Radiology, Defendants, Appellee, and Cross–Appellant.

No. 960524.

Supreme Court of Utah.

Dec. 8, 1998.

Daniel C. Wilson, Ogden, for Pennington.

Jan Malmberg, Logan, for Allstate.

ZIMMERMAN, Justice:

Plaintiff Lorin Pennington appeals the trial court's ruling dismissing his action and requiring him to pay defendant Allstate Insurance Corp. ("Allstate") $15,000 in attorney fees as a sanction under rule 11 of the Utah Rules of Civil Procedure. *See* Utah R. Civ. P. 11. Allstate cross-appeals, claiming that the trial court abused its discretion in substantially reducing the amount of attorney fees awarded to it. We affirm.

This case arises from an automobile accident that occurred on June 18, 1993. From that accident, Lorin Pennington suffered an "uncomplicated cervical strain." Pennington did not seek any treatment for his injury on the day of the accident. He did, however, see Dr. Paul R. Taylor, M.D., the following day, Friday, June 19, 1993. During this visit, Pennington complained of neck soreness. An examination of Pennington revealed that he had full range of motion. Based on this examination, Taylor did not feel that x-rays were necessary. Instead, Taylor prescribed flexion exercises, ice, heat, rest, and 800 milligrams of Ibuprofen. Taylor advised Pennington to return to see him if the neck soreness had not resolved itself over the weekend. Taylor told Pennington that if the neck soreness had not ·dissipated, Taylor might take x-rays; however, Taylor stated that he "doubted" any x-rays would be necessary. Pennington did visit Taylor again on Monday, June 22, 1998. During this second visit, Taylor prescribed more neck and shoulder exercises, ice, heat, and a muscle relaxant. Pennington did not return to see Taylor. Instead, on July 1, 1993, Pennington saw Dr. Joan Balcombe, M.D., at the emergency room at St. Benedict's Hospital. Pennington complained of neck pain and headaches. Balcombe examined Pennington and found some mild tenderness of the cervical muscles. Because of Pennington's neck tenderness, his self-reported persistent pain, and the emergency room setting, Balcombe ordered x-rays. Although Balcombe found that the x-rays were normal, she prescribed additional medication and instructed Pennington to call the hospital the following day to arrange physical therapy.

Pennington did not return to or call the hospital as instructed to arrange for physical therapy. Instead, Pennington, on July 6, 1993, sought treatment from Dr. David Trimble, D.C., at the Burns Chiropractic Clinic. After Trimble examined Pennington, he performed chiropractic treatments on Pennington six times over the next eight days. A few days later, after ending treatment with

Trimble, Pennington, on the advice of his father-in-law and attorney, Dan Wilson, sought chiropractic treatment from Dr. Dale Bennett, D.C., a long-time acquaintance of Wilson. Bennett treated Pennington twenty times over the course of the next thirty calendar days. Both Trimble and Bennett provided manipulative treatment of Pennington's entire spine, hips, and ribs. Neither chiropractor provided nonmanipulative care.

On July 23, 1993, Bennett performed a chiropractic manipulation on Pennington. The following day, Pennington reported to the emergency room at St. Benedict's Hospital. Dr. Val Rollins, M.D., examined Pennington, who complained of severe *lower* back pain. Rollins found no swelling or objective symptoms of injury. However, because Pennington complained of persistent pain and because Pennington's previous examinations and x-rays did not indicate any potential causes of Pennington's complaints, Rollins referred Pennington to Dr. Bryson Smith for a neurological consultation. Based on Pennington's subjective complaints, his treatment history, and negative x-ray results, Smith ordered an MRI scan. Pennington underwent the MRI scan on August 3, 1993, and the MRI results were normal.

After the scan came back normal, physical therapy was again recommended. Pennington went to six physical therapy sessions and three massage therapy sessions. Pennington continued chiropractic treatment with Bennett throughout this time. On some occasions, he received chiropractic treatment on the same day he received physical therapy. Pennington concluded all treatment by August 26, 1993. By this point, Pennington had accrued $4,257.87 in medical expenses.

Pennington had an insurance contract with Allstate providing that Allstate would pay for medical expenses incurred in treating personal bodily injuries caused by an automobile accident. Under the policy, however, Allstate was not required to pay any unreasonable and/or unnecessary medical expenses.

On July 30, 1993, Pennington spoke with Clay Hamblen, an adjustor, at the Ogden Allstate Claims Office and told Hamblen that he suffered a back and cervical strain. During his conversation with Pennington, Hamblen observed that Pennington appeared to have a full range of movement. Based on this observation, the fact that Pennington has seen numerous providers, and the fact that Pennington seemed determined to see additional providers, Hamblen expressed concerns about Pennington's claims to Hal Palmer, a casualty claims manager. Based on this conversation, a decision was made to perform an independent medical examination ("i.m.e.") on Pennington. Pennington's insurance policy required him to submit to medical examination by physicians chosen by Allstate. Hamblen informed Pennington that he needed to submit to an i.m.e.

After Hamblen informed Pennington about the i.m.e., Wilson telephoned Hamblen on August 13, 1993. Wilson represented himself as Pennington's attorney and father-in-law and was antagonistic about having Pennington undergo an i.m.e. Wilson told Hamblen that it was too soon for an i.m.e. and refused to have Pennington submit to it. Finally, after further delays by Wilson, Dr. Nathaniel Nord, M.D., a physician chosen by Allstate, conducted an i.m.e. on Pennington on September 28, 1993. From Nord's examination of Pennington and his treatment history, Nord concluded that Pennington had suffered a cervical strain that appeared resolved. Nord found no other physical ailments related to Pennington's auto accident. Nord concluded that Pennington had "generated undo personal concern as to his condition which led to the involvement of an excessive number of practitioners." Nord further concluded that the "undue personal concern led to his generating some duplicative treatment and expenses which were not necessary."

Based on Nord's report, Allstate concluded that much of Pennington's treatment was unnecessary and/or unreasonable and therefore refused to pay certain expenses.[1] On

1. Allstate paid all of Taylor's $91 charges, all of $23.62 in pharmacy charges, $539 of the $769 charged by Trimble, $408 of the $837 charged by Bennett, and $632.97 of the $1,881.25 charged

by St. Benedict's Hospital. Allstate did not pay any portion of the $198 charged by Smith, the $200 charged by Associates in Radiology, or the $30 charged by Balcombe. In total, Allstate paid

January 24, 1994, Pennington filed an action against Allstate, Burns Chiropractic, Trimble, Bennett, Smith, Balcombe, St. Benedict's Hospital, and Associates in Radiology. Pennington argued that all of his medical expenses were necessary and reasonable and claimed entitlement to personal injury protection ("PIP") benefits under section 31A–22–308 of the Utah Code.[2] In the alternative, Pennington claimed that if any of the charges were found to be unnecessary or unreasonable, an implied covenant between medical providers and their patients entitled Pennington to relief from the medical providers because the implied covenant required the medical providers to provide only necessary and reasonable care.

On February 19, 1994, Pennington filed a complaint against Brad Beasley, the driver of the automobile that hit him. Pennington did not send a copy of the complaint to Allstate or otherwise inform Allstate of the suit even though Pennington's insurance policy required him to inform Allstate. Approximately a month later, Pennington, in exchange for $11,000, released Beasley from any further liability related to the accident. As with the complaint, Pennington did not inform Allstate of the settlement. Pennington also entered into stipulations with Trimble and Bennett wherein they agreed to release Pennington from any charges the court found were unnecessary or unreasonable and Pennington agreed to dismiss them from the suit. Balcombe filed a motion to dismiss with prejudice, which the court granted. St. Benedict's Hospital and Associates in Radiology filed counterclaims for the amounts owed to them. Allstate settled with both, and the court dismissed them from the lawsuit with prejudice. In a minute entry, the court stated that pursuant to the parties' stipulations, all defendants except Allstate were dismissed with prejudice, thus dismissing the final individual defendant, Smith.

At the conclusion of trial, the court found that the disputed medical expenses were unnecessary and/or unreasonable and therefore dismissed Pennington's claims and entered judgment in Allstate's favor, including costs. The court also found that Pennington intentionally incurred the unnecessary expenses and that both Pennington and Wilson pursued the action with a lack of good faith. Based on these findings, the trial court sanctioned Pennington and Wilson under rule 11 of the Utah Rules of Civil Procedure, awarding Allstate $15,000 in attorney fees.

On appeal, Pennington argues that the trial court erred by imposing sanctions under rule 11 and by not granting his first and second motions for partial summary judgment; his motion for rehearing on the second motion for partial summary judgment; his motion to enter default judgment against Smith; his first, second, and third motions to compel; and his motion for sanctions against Allstate. Allstate cross-appealed, arguing that the trial court abused its discretion by reducing Allstate's attorney fee award. We begin by addressing Pennington and Wilson's challenge to the court's rule 11 sanction against them.

■ Pennington and Wilson argue that the trial court erred in awarding $15,000 in attorney fees as a sanction under rule 11. The trial court found that Pennington and Wilson pursued Pennington's claim with a lack of good faith and concluded that they violated rule 11 by pursuing a spurious claim. In reviewing a trial court's imposition of sanctions under rule 11, we first review the trial court's factual findings under the "clearly erroneous" standard. *Barnard v. Sutliff*, 846 P.2d 1229, 1235 (Utah 1992). We then review the trial court's legal conclusions for correctness. *See id.* Finally, we review the

$1,694.59 of Pennington's claimed medical expenses, leaving 2,563.28 unpaid.

**2.** In Utah, every motor vehicle insurance policy must include personal injury protection, which includes "the reasonable value of all expenses for necessary medical, surgical, X-ray, dental, rehabilitation, ... hospital, and nursing services, not to exceed a total of $3,000 per person." Utah

Code Ann. § 31A–22–307(1)(a) (1991). When a person suffers an injury resulting from an automobile accident, that person cannot maintain a tort cause of action unless the person died, was dismembered, or sustained permanent disability or disfigurement in the accident, or unless the accident caused the person to sustain medical expenses in excess of $3,000.

type and amount of sanctions imposed under the abuse of discretion standard. *See id.*

We begin by reviewing the court's factual findings. The trial court found that Pennington and Wilson intentionally incurred unnecessary medical expenses to exceed the PIP cap of $3,000 in order to pursue a personal injury claim against the tortfeasor, that Wilson attempted to force Allstate to pay unnecessary and unreasonable expenses incurred by Pennington, and that Wilson's primary objective in proceeding with Pennington's claim was to recover attorney fees. Each of these findings hinges on the intent of Wilson and Pennington. We emphasize that intent is a question of fact. *See Anderson v. City of Bessemer*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). And we will not set aside a trial court's findings of fact unless they are clearly erroneous. *See* Utah R. Civ. P. 52(a). A factual finding is "deemed 'clearly erroneous' only if it is against the clear weight of the evidence." *Doelle v. Bradley*, 784 P.2d 1176, 1178 (Utah 1989). To show that a factual finding is against the clear weight of the evidence, "an appellant must first marshal all the evidence supporting the finding and then demonstrate that the evidence is legally insufficient to support the findings even in viewing it in the light most favorable to the court below." *Reid v. Mutual of Omaha Ins. Co.*, 776 P.2d 896, 899 (Utah 1989). In sum, we will not overturn a trial court's factual findings if its "account of the evidence is plausible in light of the record viewed in its entirety." *Anderson*, 470 U.S. at 574, 105 S.Ct. 1504.

█ Here, the evidence provides support for the court's finding that Pennington incurred unnecessary medical expenses. The court considered evidence of Pennington's trips to numerous medical providers on numerous occasions, including numerous visits to two different chiropractors. The court also considered the nature of the injury and the type of treatment usually prescribed for such injuries, treatment which does not usually correspond to that obtained by Pennington. The trial court also relied on evidence that Pennington's chiropractic session treated areas of Pennington's body not involved with his injury. Moreover, the trial court

relied on the expert testimony of Dr. Nord, who testified that given the type of injury Mr. Pennington sustained, treatment beyond that provided by Dr. Taylor was unreasonable and unnecessary.

█ Likewise, the trial court's findings that Wilson attempted to force Allstate to pay unreasonable and unnecessary fees and that his primary objective in pursuing Pennington's claim was to recover attorney fees are reasonable in light of the entire record. The trial court found that Wilson failed to inform Allstate about the filing and settlement of a claim against the tortfeasor even though Pennington's insurance contract required him to inform Allstate. Wilson and Pennington have not disputed the fact that they did not inform Allstate about the third-party claim and settlement. The trial court also found that Wilson and Pennington attempted to force Allstate to pay unnecessary and/or unreasonable medical expenses in order to exceed the PIP cap. To support these findings, the trial court relied heavily on a letter Wilson sent to each individual medical provider. The letter states in part:

Allstate Insurance Company has refused to pay for Lorin Pennington's treatment as a result of his collision of 6–18–93.

A lawsuit has been filed and a copy of the Complaint and Summons is enclosed. In order to fully represent my clients interests, the lawsuit alleges in the alternative that, (1) either the services received by Mr. Pennington were reasonable and necessary, and therefore Allstate must pay for them; or (2) the services were unreasonable and unnecessary and if Allstate doesn't have to pay, then Mr. Pennington is also not required to pay. In other words, if these bills are to be paid, it is Allstate that must pay them. I have previously won cases on this theory. In fact, Mr. Pennington is entitled to Summary Judgment that would allow him to simply be released from this lawsuit and leave it between Allstate and the other health care providers as to whether or not any charges are to be paid. However, my experience is that because of the cost, the health care providers never pursue the case and the insurance company gets away without pay-

ing the bills. This doesn't make me very happy and so I don't plan to do that in this case. Instead, I intend to press this matter to trial.

It is not our intent to cause you any trouble or inconvenience. The only reason you are named in the lawsuit is that I am required to represent my client's interests to the exclusion of all others. However, I can let you out of this lawsuit and dismiss you from this case in exchange for your agreement to be bound by the court's ruling even though you are not a party....

I encourage you to accept this offer. The outcome to you is the same whether or not you are a party. This way you avoid the inconvenience of being involved in this lawsuit.

The trial court found that several portions of the letter indicated the improper motives of Pennington and Wilson, including the fact that Wilson improperly implied that he would protect the interests of the individual doctors even though he had named them as defendants in Pennington's action; Wilson represented to the individual medical providers that Allstate was the true defendant and should have to pay Pennington's bills; Wilson failed to inform each provider that even if Pennington recovered the full amount of PIP coverage, the amount still owed to the providers exceeded the amount of remaining PIP benefits; and Wilson implied that he wanted to go after Allstate because insurance companies often "get[ ] away" with not having to pay. The trial court also relied on evidence that after sending these letters, Wilson personally contacted Dr. Bryson Smith and told Smith that if he would defend the necessity of his services, Allstate would feel forced to pay Pennington's bills. Wilson even offered to provide Smith with free legal representation. The trial court also relied on a letter Wilson sent to Allstate in which he attempted to get Allstate to pay the $1,300 remaining PIP benefits by stating that

this is a no lose situation from our standpoint. By structuring the suit the way I have, either their treatment was reasonable and necessary and Allstate has to pay for it, or else it was unreasonable and unnecessary and the doctors have to eat it.

In addition, if Allstate is required to pay even $1.00, I'm entitled to full payment of attorney fees and costs.

I think the easiest way out of this is for Allstate to go ahead and pay the $1,300 balance owing and let's get on to other things.

From this evidence and other evidence in the record, we conclude that the trial court's finding that Pennington and Wilson filed the lawsuit to force Allstate to pay unnecessary and/or unreasonable medical charges is not clearly erroneous. Having found that the trial court's factual findings are not clearly erroneous, we move to our review of the trial court's legal conclusion that Wilson and Pennington violated rule 11.

■■■ The trial court concluded that Wilson and Pennington violated rule 11 of the Utah Rules of Civil Procedure by pursuing an action to recover unnecessary and/or unreasonable medical expenses. The trial court concluded that Wilson and Pennington brought a spurious action and lacked good faith in proceeding with it. We review the trial court's conclusion that particular conduct violates rule 11 for correctness. *See Barnard,* 846 P.2d at 1235. Rule 11 provides:

By presenting a pleading, written motion, or other paper to the court (whether by signing, filing, submitting, or later advocating), an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,

(1) [the action] is not being [brought] for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law[.]

Utah R. Civ. P. 11(b). Under the terms of Pennington's insurance contract, Allstate was not required to pay unnecessary and/or unreasonable medical expenses. We hold that

pursuing an action to force an insurer to pay unreasonable and/or unnecessary medical charges to exceed the PIP cap is an improper purpose. Moreover, existing contract law precluded Pennington from recovering such medical expenses from Allstate. We therefore conclude that the trial court was correct in sanctioning Wilson under rule 11.[3] We now review the type and amount of sanction.

■ The trial court imposed rule 11 sanctions against Wilson and Pennington in the amount of $15,000 in attorney fees. We will not overturn a trial court's sanction unless the trial court abused its discretion. *See Barnard*, 846 P.2d at 1235. We conclude that the trial court did not abuse its discretion in awarding attorney fees as a rule 11 sanction. Rule 11 itself provides that payment of attorney fees may be an appropriate sanction: "the sanction may consist of . . . an order directing payment to the movant of some or all of the reasonable attorney fees and *other* expenses incurred as a direct result of the violation." Utah R. Civ. P. 11(c)(2).

■ Allstate argues on appeal that the trial court abused its discretion by reducing the award of attorney fees to $15,000 from the $27,575 claimed by Allstate. The trial court explained the reduction by stating:

> The amount claimed is substantially reduced from the amount claimed by Defendant Allstate, as the court believes excessive time was spent by Attorney for Defendant Allstate on this matter, although it is recognized the amount per

hour claimed was less than often charged by attorneys. Additionally, there were some unnecessary motions and pleadings filed by the defendant and some work for research of the law and superfluous reviews of documents which should not be counted.

We decline to overturn the court's valuation of a reasonable fee because we cannot conclude that the trial court abused its discretion. The trial court considered the amount of work necessary to defend against the Pennington claim and declined to award Allstate for work which it believed was not required. Therefore, we affirm the trial court's $15,000 sanction as reasonable.

■ We also affirm the trial court's cost award to Allstate. Like an award of attorney fees, we will affirm a trial court's award of costs unless the trial court abused its discretion. *See Cornish Town v. Koller*, 817 P.2d 305, 316 (Utah 1991). The trial court considered evidence of Allstate's fees and Pennington's objections to them and awarded $6,148.15 in costs to Allstate. Given all the evidence, we conclude that the trial court did not abuse its discretion in its costs award. We now address Pennington's remaining challenges.

Pennington argues on appeal that the trial court erred in denying his second motion for partial summary judgment and in refusing to reconsider the denial of that motion. In his second motion for partial summary judgment, Pennington asked the court to require Allstate to pay Associates in Radiology's $30

---

3. In addition to rule 11, Allstate argues that an award of attorney fees was proper under section 78–27–56 of the Utah Code. Section 78–27–56 directs courts in civil actions to award reasonable attorney fees "to a prevailing party if the court determines that the action or defense to the action was without merit and not brought or asserted in good faith." However, the court may award limited or no fees if it finds that the offending party filed an affidavit of impecuniosity in the action or if the court enters in the record its reasons for not awarding fees.

We agree that the trial court's findings in this case would warrant application of section 78–27–56. Allstate was the prevailing party; the factual findings provide that Wilson and Pennington lacked good faith; and as a matter of law, Pennington's action lacked merit. In contrast, rule 11 sanctions do not require a party to

act with a lack of good faith. *See Taylor v. Estate of Taylor*, 770 P.2d 163, 171 n. 13 (Utah Ct.App. 1989).

We also take this opportunity to clarify the appropriate standard of review for section 78–27–56. In *Valcarce v. Fitzgerald*, 961 P.2d 305 (Utah 1998), we stated that the determination under section 78–27–56 that a party did not bring an action in good faith "is a mixed question of law and fact that turns on a factual determination of a party's subjective intent." *Id.* at 315–16. We now recognize that we did not clearly articulate the appropriate standard for each separate inquiry. To clarify the matter: As to whether the party lacked good faith, the trial court must make a factual finding of a party's subjective intent. In addition, the trial court must conclude, as a matter of law, that the action was without merit.

fee for reviewing cervical x-rays. The trial court denied Pennington's motion because the court concluded that disputed material issues of fact existed as to the reasonableness and/or necessity of the $30 fee. Because we uphold the trial court's judgment that all of Pennington's medical treatment, outside of his two visits to Dr. Taylor, was unreasonable and unnecessary, the trial court properly denied his second motion for partial summary judgment and his motion for rehearing.

 Pennington also contends that the trial court erred by not granting his first, second, and third motions to compel and for discovery sanctions. As with sanctions under rule 11, we will uphold a trial court's denial or imposition of sanctions under rule 37 of the Utah Rules of Civil Procedure unless the court abused its discretion. Rule 37 allows a trial court to order a party to cooperate in discovery, *see* Utah R. Civ. P. 37(a), permits a court to impose sanctions if a party fails to comply with its order, *see id.* 37(b), and in some instances allows a court to sanction an uncooperative party without having first issued an order, *see id.* 37(d). However, sanctions under rule 37 are not mandatory. *See G.M. Leasing Corp. v. Murray First Thrift & Loan Co.,* 534 P.2d 1244, 1245 (Utah 1975). Given the events of this case and Wilson's and Pennington's conduct, the trial court did not abuse its discretion in declining to issue an order or impose sanctions under rule 37.

Pennington next argues that the trial court erred by not sanctioning Allstate for missing a properly scheduled hearing. We decline to address this argument because Pennington failed to cite any rule or case law in support of his argument.

 Pennington argues that the trial court erred in refusing to grant default judgment against Dr. Smith and in dismissing with prejudice Pennington's cause of action against him. Pennington argues that rule 55 of the Utah Rules of Civil Procedure entitled him to a default judgment against Smith because Smith failed to appear. We do not agree that Smith's failure to appear entitled Pennington to a default judgment. Under rule 55, a defendant's failure to appear warrants an *entry of default* but does not automatically entitle a plaintiff to a *default judgment.*[4] Even though a defendant fails to appear, a plaintiff is entitled to default judgment "only if the well-pled facts show that the plaintiff is entitled to judgment as a matter of law." *Skanchy v. Calcados Ortope,* 952 P.2d 1071, 1076 (Utah 1998). Likewise, "[t]he uncontroverted allegations of the complaint must be sufficient on their face to establish a valid claim against the defaulting party." *Id.*

In this case, it appears from the allegations of the complaint that the trial court did not err in declining to enter a default judgment against Smith. Pennington's complaint presented inconsistent legal theories. Pennington initially alleged that all the medical expenses he incurred were reasonable and necessary and that Allstate must pay for his expenses. The complaint then seeks a declaratory judgment against the individual medical providers, alleging in substance that they provided unnecessary or unreasonable medical services for which he is not obligated to pay. Because the complaint itself presents inconsistent legal theories, we conclude that the trial court did not err in declining to enter default judgment against Smith.

 Finally, Allstate asks this court to award it attorney fees and costs expended for this appeal. Rule 33 of the Utah Rules of Appellate Procedure permits this court to award attorney fees and costs to the prevailing party if we find the appeal was frivolous. Rule 33 defines a frivolous appeal as one that is "not warranted by existing law." Because we conclude that Pennington and Wilson brought an appeal not warranted by existing

---

4. Under rule 55 of the Utah Rules of Civil Procedure, a default judgment is a two-step process. *See* Utah R. Civ. P. 55. If a party fails to plead or otherwise defend, the clerk of the court makes an entry of default. After the clerk makes the entry of default, the nondefaulting party must move to have default judgment entered. Upon motion, the clerk may enter default judgment if the claim against the defaulting party is for a sum certain, that party is not an infant or incompetent, and the entry of default resulted from a failure to appear. In all other cases, the nondefaulting party must apply to the court for an entry of default judgment.

law, we award Allstate its attorney fees and costs on appeal.

In conclusion, we affirm the trial court's rulings. We remand the issue to the trial court to determine Allstate's damages, which consist of Allstate's costs and attorney fees incurred in defending against Pennington's appeal. *See Hunt v. Hurst,* 785 P.2d 414, 417 (Utah 1990). This assessment of damages is to run only against the attorney, Wilson.

Chief Justice HOWE, Associate Chief Justice DURHAM, Justice STEWART, and Justice RUSSON concur in Justice ZIMMERMAN's opinion.