*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2014 UT 20**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

BRUCE R. WISAN,
*Plaintiff and Appellee,*
*v.*
CITY OF HILDALE and TWIN CITY WATER AUTHORITY,
*Defendants and Appellants.*

No. 20100993
Filed June 17, 2014

Fifth District, St. George Dep't
The Honorable James L. Shumate
No. 070500105

Attorneys:

Jeffrey L. Shields, Zachary T. Shields, Michael C. Walch,
Michael D. Stanger, Nathan R. Denney, Salt Lake City,
for appellee

Peter Stirba, R. Blake Hamilton, Salt Lake City, for appellants

JUSTICE DURHAM authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE NEHRING,
JUSTICE PARRISH, and JUSTICE LEE joined.

JUSTICE DURHAM, opinion of the Court:

## INTRODUCTION

¶1     This case comes to us as another installment in the ongoing dispute surrounding land owned by the United Effort Plan Trust (Trust) located in Hildale, Utah. In early 2007, appellee Bruce Wisan, court-appointed trustee of the Trust, filed a complaint against the City of Hildale (Hildale) and the Twin City Water Authority (TCWA) to compel the subdivision of certain parcels of Trust property located within Hildale's boundaries. When Hildale and TCWA failed to appear or answer the complaint, Mr. Wisan moved for entry of default judgment against both parties, which the district court granted. Appellants subsequently filed a rule 60(b) motion in the district court to set aside the default judgment. While that motion was pending, appellants filed this direct appeal from the default judgment. The district court ultimately denied appellants' rule 60(b) motion; appellants never appealed from that denial.

¶2    Litigants may challenge a default judgment either by filing a rule 60(b) motion with the district court or by appealing the default judgment directly. The choice of which course to follow will depend on the reasons alleged for seeking relief from the judgment. The proper grounds for a direct appeal from a default judgment are necessarily limited to those that were necessarily decided by the district court as a prerequisite to entry of default judgment. The proper grounds for a rule 60(b) motion, in contrast, are limited to those listed in the rule. Because this direct appeal from the default judgment relies exclusively on 60(b) arguments, which were made to the district court in a postjudgment motion and disposed of in an unappealed order, we dismiss this direct appeal as the incorrect vehicle for relief and allow the default judgment to stand.

## BACKGROUND

¶3    The land in Hildale, Utah, most of which is currently owned by the United Effort Plan Trust, has been the subject of numerous disputes for over two decades.[1] The Trust was originally created in 1942 by the spiritual leadership of a fundamentalist religious movement called the "Priesthood Work"—predecessors of the Fundamentalist Church of Jesus Christ of Latter-day Saints (the Church or FLDS). The Trust was created as a depository into which the movement's adherents could contribute or "consecrate" their property to be managed centrally by Church leaders acting as trustees of the Trust. In addition to their role as trustees, FLDS leadership also exerted substantial influence on the civic affairs of Hildale.

¶4    Over the ensuing years, the Trust acquired the majority of the land and improvements in Hildale through contributions from Church members, but the Church leadership trustees allowed the contributing residents to continue living on the land. A few decades after the Trust's creation, however, several Trust property residents sued the trustees for breach of fiduciary duty, which set in motion a protracted chain of litigation involving the nature and administration of the Trust.

¶5    A primary concern in that litigation was whether the actions (or inactions) of the Church leadership trustees had harmed the

---

[1] For a more extensive history surrounding the land in Hildale, Utah, the creation of the Trust, and the subsequent litigation left in its wake, see *Jeffs v. Stubbs* 970 P.2d 1234, 1239 (Utah 1998) and *Fundamentalist Church of Jesus Christ of Latter-day Saints v. Lindberg*, 2010 UT 51, ¶¶ 2–22, 238 P.3d 1054.

interests of Trust property residents. That concern came to a head when the Church leadership trustees left the Trust and its beneficiaries vulnerable to default judgments by failing to retain counsel to defend the Trust in litigation. In response, and at the behest of the attorney general of Utah, the district court removed the Church leadership trustees and appointed a special fiduciary in their stead. The newly appointed fiduciary was given specific instructions to administer the Trust according to the Trust beneficiaries' "just wants and needs" on a neutral, nonreligious basis. In particular, the court ordered the trustee to (a) work toward the payment of the Trust property taxes, (b) request and collect money for the payment of taxes from persons residing on Trust property, and (c) take action to remove persons who refuse to pay their fair share of property taxes from Trust property.

¶6   Shortly after the special appointment, Warren Jeffs, then leader of the FLDS Church, made official pronouncements that directed his adherents to refuse to cooperate with the Trust or the court-appointed trustee, specifically declaring that "we must continue to answer them nothing and not give into [sic] their proposals." Mr. Jeffs further stated that it was his intention "not [to] compromise [with the trustee] in the slightest degree" and "not [to] work out differences."

¶7   The court later appointed Mr. Wisan as the successor trustee. In the exercise of his duties, Mr. Wisan became aware that multiple housing structures existed on most of the tax parcels located in Hildale. In many cases, these housing structures belonged to multiple individuals or families, some members of the dominant FLDS religion, and some not. Because Washington County, where Hildale is located, assesses and collects taxes according to the legally described parcels, the various residents of each tax parcel shared the property tax obligation. As a result, nonpayment of taxes by any one resident subjected all of the other residents living on that same tax parcel to the imposition of penalties, interest, and eventually loss of the property to a tax sale.[2]

¶8   In light of this situation, Mr. Wisan determined it would be prudent to subdivide the Trust property. The conceptualized subdivisions would divide the existing tax parcels into separate legal

---

[2] In fact, because certain Trust beneficiaries refused to pay property taxes, the Trust came perilously close to losing the bulk of its Hildale property. It was spared this result when, only days before the County's scheduled property tax sale, several large property tax payments cured the default.

lots. The primary goal of this subdivision plan was to allow the Trust to distribute separately described pieces of property to Trust beneficiaries, thus allowing them to remain free from the risk of losing their property as a result of their neighbors' tax delinquency. Moreover, subdivision would facilitate the trustee's ability to monitor tax payments connected to each individual housing structure in accordance with the trustee's court-ordered duties.

¶9 On numerous occasions, Mr. Wisan consulted with Hildale's mayor David Zitting regarding the proposed subdivision, in hopes of eventually securing the city's approval. Although Mayor Zitting stated it was his personal opinion that subdividing the property into separate legal lots might be good for city management, he stressed that, for nonspecific reasons, he could not cooperate with Mr. Wisan as court-appointed trustee. Notwithstanding Mayor Zitting's lack of cooperation, Mr. Wisan continued to develop the subdivision plan, incurring engineering fees in excess of $1 million to prepare the subdivision plats. Finally, on December 13, 2006, Mr. Wisan submitted a completed application together with the subdivision plats to Hildale for approval as required under Utah law. UTAH CODE §§ 10-9a-603(3), (4)(a). Hildale, however, remained uncooperative. Hildale's counsel explained to Mr. Wisan that the city "ha[d] elected to abstain from taking any action with respect to the petition to subdivide the property,"[3] but "w[ould] not defend or object to . . . the entry of a court order granting a petition to . . . subdivide the property."

¶10 Mr. Wisan accordingly filed a complaint against Hildale on January 17, 2007, requesting either (a) a writ of mandamus to compel Hildale to consider the subdivision application, or (b) declaratory judgment directing the Washington County recorder to record the proposed subdivision plats without formal city approval. Mr. Wisan also joined TCWA as a defendant because he believed TCWA was the culinary water authority for Hildale, whose approval was necessary under Utah law to validate the subdivision plan.[4]

---

[3] Mr. Wisan inferred from the statements of Mayor Zitting and Hildale's counsel that Hildale's noncooperation was a product of Mr. Jeffs's official pronouncements directing FLDS followers to "answer [the trustee] nothing" and to refuse to "compromise . . . in the slightest degree."

[4] Mr. Wisan also joined Russell Shirts, the Washington County recorder, as a defendant in this case. Mr. Shirts filed a timely answer. But after the public works director for Washington County reviewed
(continued...)

*See* UTAH CODE § 10-9a-603(2)(a). Two copies of the summons and complaint were properly served on Mayor Zitting, one in his capacity as registered agent of Hildale, and the other in his capacity as registered agent of TCWA. But, consistent with the communications from Mayor Zitting and Hildale's counsel, neither Hildale nor TCWA opposed the complaint by filing a timely response. As a result, on February 27, 2007, the court entered default against both Hildale and TCWA under rule 55(a) of the Utah Rules of Civil Procedure.

¶11   Nevertheless, in an effort to maintain a working relationship with the city, Mr. Wisan refrained from immediately petitioning the court for default judgment. Instead, he continued to work with the county's engineers and surveyors to prepare acceptable subdivision plats.[5] Mr. Wisan also sent a letter to Mayor Zitting proposing a five-month timetable to negotiate with the city and come to a voluntary agreement regarding subdivision. In light of the city's prior lack of cooperation, Mr. Wisan also noted that if no voluntary agreement could be reached, he would simply petition the court for entry of default judgment. Mr. Wisan finished his letter by requesting a timely response to the proposed five-month timetable and asked the city to propose any other viable alternatives it deemed preferable. Mayor Zitting never responded.

¶12   Around this same time, and in an abrupt change of course, Mr. Jeffs sent a letter to his followers instructing them to cease passively ignoring the appointed fiduciary and to instead retain legal counsel and demand "protection of their rights." Such action, he said, would appear to be the work of individuals rather than the authorities of the Church, creating the impression that "the Priesthood is answering them nothing, but at the same time individuals are demanding their rights of protection." In the following weeks, Mr. Wisan perceived what he described as more ardent opposition from city leaders regarding the subdivision plan. Unable to obtain the city's cooperation, Mr. Wisan instead secured Washington County's stipulation to entry of default judgment and moved the district court for entry of default judgment against Hildale and TCWA.

---

[4] (...continued)
and approved the subdivision plat, Mr. Shirts stipulated to entry of a judgment ordering him to record the subdivision plat.

[5] Washington County ultimately certified all of the plats for technical correctness and approved them for recording in "as is" condition.

¶13  In response, Hildale and TCWA jointly filed a preemptory opposition to default judgment in which both parties acknowledged their "decision not to file a formal answer to the complaint" but alleged that default judgment was still improper because the Mr. Wisan had failed to comply with state and local law regarding the subdivision process. A few days later, TCWA retained separate counsel[6] and independently made a second motion, this time petitioning the court to vacate its rule 55(a) entry of default.[7] Apparently unaware of TCWA's objections, however, Judge Ludlow ordered default judgment against both Hildale and TCWA. Judge Ludlow later recused himself, and the case was reassigned to Judge Shumate, who vacated the default judgment[8] but preserved and took under advisement the question of entry of default in hopes that doing so would "bring everybody to the table" and "push [the parties] towards . . . [voluntary] resolution" of the subdivision dispute.[9] Judge Shumate cautioned, however, that if he continued to see "obstreperous behavior" from TCWA, he "could still make a ruling on [the entry of default]," which would essentially foreclose negotiations and compel TCWA to comply with a resulting default judgment.

---

[6] Hildale ultimately hired the same counsel as TCWA but did so much later, in August 2010. Until that time, Hildale did not attempt to set aside the entry of default (under rule 55(c)) or the subsequent entry of default judgment (under rule 60(b)).

[7] In doing so, TCWA incorrectly relied on rule 60(b)'s standards for relief rather than rule 55(c)'s standard of "good cause shown." rule 60(b)'s standards govern relief only from default *judgment* under rule 55(b), while rule 55(c)'s "good cause" standard governs relief from an *entry of default* under rule 55(a). This distinction is made clear in rule 55(c) which declares that "[f]or good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with [r]ule 60(b)."

[8] Judge Shumate apparently based his decision to vacate solely on the technical ground that the default judgment failed to include a copy of the subdivision plat it had ordered Washington County to record and was therefore "basically . . . meaningless." The record reflects that the court's decision did not have anything to do with the merits of TCWA's arguments.

[9] The court was clear that "the resolution we all seek is that [TCWA] ha[s] a chance to have input, [so it] can then feel satisfied that [it has] done [its] responsibility under the law and can sign off on the plat."

¶14 The parties thereafter met multiple times to discuss the subdivision issue, but after months of unsuccessful negotiations, Mr. Wisan requested that the court render a final decision on his original default judgment petition. On October 12, 2010, the court held a hearing on Mr. Wisan's default judgment petition and TCWA's prior motion to set aside the rule 55(a) entry of default. At the hearing, Judge Shumate noted that his "original intention in taking the matter under submission for over two years" was to encourage "the parties [to] reach[] a settlement," but, given that it was "well-established that this matter is in default," the court orally declared that "the motion to set aside the [entry of default] . . . is . . . denied and a default judgment may enter."

¶15 Following the court's oral announcement, Hildale and TCWA immediately filed a preemptory rule 60(b) motion for relief from the impending judgment. The district court did not rule on this motion before entering default judgment against Hildale and TCWA on November 3, 2010.[10] Both Hildale and TCWA filed a notice of direct appeal from the default judgment on November 29, 2010. While this appeal was pending, and nearly three years after default judgment was entered, the district court finally denied Hildale and TCWA's rule 60(b) motion on July 3, 2013.[11] Neither party filed an appeal from that denial.

¶16 On appeal, Hildale and TCWA allege that the district court erred by entering default judgment against them. Hildale and TCWA attempt to rely on rule 60(b) as the vehicle for relief, arguing that the default judgment should be set aside because the fiduciary did not act in good faith in pursuing default judgment and because Mayor Zitting, though registered agent for both parties, did not know he needed to give both parties notice of the complaint against them. Alternatively, Hildale and TCWA argue that the default judgment should be vacated because recording the plats would be contrary to public policy. Because we dismiss this appeal on procedural grounds, we do not reach the merits of these arguments.

---

[10] Default judgment was also entered by stipulation against the Washington County recorder, who was ordered to immediately record the subdivision plat attached to the default judgment.

[11] The delay was largely due to an order filed by the federal district court staying any further proceedings in this case pending resolution of the FLDS Church's motion to intervene in a federal case on free exercise grounds.

## ANALYSIS

¶17  Rule 55 of the Utah Rules of Civil Procedure governs the process for obtaining a default judgment against a party that fails to appear or answer a complaint. "When a party against whom a judgment . . . is sought has failed to plead or otherwise defend . . . the clerk shall enter the default of that party." UTAH R. CIV. P. 55(a). Although "a defendant's failure to appear warrants an *entry of default,*" it "does not automatically entitle a plaintiff to a *default judgment.*" *Pennington v. Allstate Ins. Co.*, 973 P.2d 932, 940 (Utah 1998) (emphasis in original). After the clerk enters default, the nondefaulting party must then petition either the clerk or the court—depending on the circumstances—to enter judgment against the defaulting party.[12] UTAH R. CIV. P. 55(b). The clerk or the court may then enter default judgment, but "only if the well-pled facts show that the plaintiff is entitled to judgment as a matter of law." *Pennington*, 973 P.2d at 940 (internal quotation marks omitted).

¶18  If the aggrieved party challenges the entry of default before the judgment is entered, the court may set aside the entry of default "[f]or good cause shown." UTAH R. CIV. P. 55(c). However, if a default judgment has already been entered, the defaulting party has two options for seeking relief from the judgment: it may (1) directly appeal the default judgment and/or (2) file a rule 60(b) motion with the district court.

¶19  The circumstances warranting a direct appeal from a default judgment are very limited. A party challenging a default judgment on direct appeal may raise only grounds that were necessarily decided by the district court in the entry of default judgment. Those grounds are (1) whether default was properly entered against a party under rule 55(a),[13] (2) whether the

---

[12] The nondefaulting party may petition the clerk, rather than the court, for entry of judgment only if: (1) the defendant's default is for failure to appear, (2) the defendant is not an infant or incompetent person, (3) the defendant has been personally served pursuant to rule 4(d)(1), and (4) the claim against the defendant is for a sum certain or for a sum that can be made certain by computation. UTAH R. CIV. P. 55(b)(1). Under all other circumstances, the nondefaulting party may petition the court to enter default judgment.

[13] *P&B Land, Inc. v. Klungervik*, 751 P.2d 274, 276–77 (Utah Ct. App. 1988) ("No default judgment may be entered . . . unless default has previously been entered. . . . [T]he entry of default is an essential predicate to any default judgment." (footnote, citation, and internal

(continued...)

complaint's well-pled facts demonstrate that the plaintiff is entitled to judgment as a matter of law,[14] and (3) whether the relief granted is consistent in kind and amount with the complaint's prayer for relief and is within the district court's authority to grant.[15]

¶20     In contrast, the grounds under which a 60(b) challenge may be brought are both inclusive of the above grounds and also more expansive. If the defaulting party moves the district court to set aside the default judgment under rule 60(b), the court "may in the furtherance of justice relieve a party or his legal representative from [that] judgment" for reasons including "mistake, inadvertence, surprise, or excusable neglect," "newly discovered evidence," and fraud by an adverse party, among others. UTAH R. CIV. P. 60(b). The district court's ruling on that motion is a final appealable order, which an appellate court can then review for error. *Amica Mut. Ins.*

---

[13] (...continued) quotation marks omitted)).

[14] *Pennington*, 973 P.2d at 940; *See also Skanchy v. Calcados Ortope SA*, 952 P.2d 1071, 1076 (Utah 1998) ("On appeal from a default judgment, a defendant may contest the sufficiency of the complaint and its allegations to support the judgment." (internal quotation marks omitted)); *Yuanzong Fu v. Rhodes*, 2013 UT App 120, ¶ 27, 304 P.3d 80 (McHugh, J., concurring in part and dissenting in part) ("[A] party appealing from a default judgment entered as a result of the failure to appear can challenge the sufficiency of the complaint to support the judgment for the first time on appeal.").

[15] UTAH R. CIV. P. 54(c)(2) ("A judgment by default shall not be different in kind from, or exceed in amount, that specifically prayed for in the demand for judgment."). *See also Yuanzong Fu*, 2013 UT App 120, ¶ 24 (McHugh, J., concurring in part and dissenting in part) ("[W]ith respect to a default entered for failure to appear, a party may challenge the amount of damages for the first time on appeal of the default judgment itself."); *Katz v. Pierce*, 732 P.2d 92, 95 (Utah 1986) (holding that the court would not consider—on appeal from the district court's denial of appellants' rule 60(b) motion—a new challenge to the district court's award of damages in excess of the amount prayed for because appellants did not raise the issue in their rule 60(b) motion below *or on direct appeal* from the judgment, though appellants "might have done so").

*Co. v. Schettler*, 768 P.2d 950, 970 (Utah Ct. App. 1989) ("[A]n order denying relief under rule 60(b) is a final appealable order.").[16]

¶21     In this case, Hildale and TCWA availed themselves of both a direct appeal and a rule 60(b) motion. Hildale and TCWA first filed a rule 60(b) motion with the district court, seeking to vacate the impending default judgment they expected in light of Judge Shumate's announcement at the October 12 hearing that "default judgment may enter." When default judgment did enter on November 3, 2010, Hildale and TCWA next filed a notice of appeal from the "Final Judgment and Order . . . entered on November 2, 2010."[17] This is the direct appeal before us now. Notwithstanding the filing of a notice of appeal, the district court still had jurisdiction to rule on the 60(b) motion pending before it. *See Baker v. W. Sur. Co.*, 757 P.2d 878, 880 (Utah Ct. App. 1988) ("[T]he trial court has jurisdiction to consider a 60(b) motion while an appeal is pending. . . . [I]f the district court finds the motion to be without merit, it may enter an order denying the motion, and the parties may appeal from that order."). The district court ultimately did rule on

---

[16] We recognize that the court of appeals has established a bright line rule disallowing direct appeals from a default judgment entered for failure to appear. *See State v. Sixteen Thousand Dollars U.S. Currency*, 914 P.2d 1176 (Utah Ct. App. 1996). The proper and exclusive course, according to the court of appeals, is for litigants to first file a 60(b) motion in the district court, followed only then by an appeal from the district court's denial of that motion. *Id.* at 1178. The court of appeals has subsequently reaffirmed this holding from *Sixteen Thousand Dollars* in recent years. *See, e.g., Salazar v. Chavez*, 2012 UT App 177, ¶ 3 n.2, 282 P.3d 1033 ("[A] defaulting party is not entitled to appeal from the default judgment directly but must first seek redress through a rule 60(b) motion and appeal from the denial of that motion." (internal quotation marks omitted)); *Yuanzong Fu*, 2013 UT App 120, ¶ 15 (quoting *Sixteen Thousand Dollars* for the proposition that "[i]n order to preserve a challenge to a default judgment entered for failure to appear, the defendant must first seek relief in the trial court" followed only then by an appeal from the trial court's denial of a postjudgment motion). Because we hold that there are certain circumstances—though narrow— under which a direct appeal can be brought from a default judgment without first petitioning the district court for rule 60(b) relief, we overrule *Sixteen Thousand Dollars* and its progeny on this point.

[17] The notice of appeal incorrectly identifies the date of the order as November 2, 2010. The order was actually entered on November 3, 2010.

that motion, denying it on July 3, 2013. However, Hildale and TCWA never filed an appeal from that ruling.

¶22    We are thus left to decide only this direct appeal. As stated above, we will entertain a direct appeal from a default judgment (for failure to appear) only when the defaulting party alleges grounds that were necessarily decided by the district court in entering default judgment. Hildale and TCWA have failed, however, to raise any such grounds in this appeal. Instead they simply present anew the same arguments they made in their 60(b) motion before the district court. Specifically, Hildale and TCWA argue that the district court should have set aside the default judgment because (1) Mr. Wisan allegedly did not act in good faith in pursuing default judgment; (2) Mayor Zitting, though the registered agent for both parties, did not know he needed to give both parties notice of the complaint against them; and (3) recording the plats would be contrary to public policy. None of these issues were necessary to the district court's entry of default judgment. Rather, they assert possible reasons— exclusive to rule 60(b)—for which a court may grant a party relief from a judgment properly entered as a matter of law. The district court rejected these arguments and denied the 60(b) motion. Hildale and TCWA could have appealed from that ruling, but failed to do so. But these grounds are not reviewable on direct appeal.[18] Appeal on these grounds must be taken from the district court's denial of the defaulting party's rule 60(b) motion. Because Hildale and TCWA failed to appeal that denial, and because these particular rule 60(b) arguments are not reviewable on direct appeal, we dismiss this appeal without reaching the merits of these arguments.

———————

[18] Alhough Hildale and TCWA also made these 60(b) arguments to the district court *prior to* entry of the default judgment, this timing does not make the arguments part of our review of the default judgment itself. *See Jensen v. Intermountain Power Agency*, 1999 UT 10, ¶ 7, 977 P.2d 474 (noting that appellate courts have jurisdiction only over judgments or orders designated in the notice of appeal because "the object of a notice of appeal is to advise the opposite party that an appeal has been taken from a specific judgment in a particular case" (internal quotation marks omitted)); *see also Jensen v. Jensen*, 2013 UT App 143, ¶ 3, 304 P.3d 878 (holding that a district court's order submitted "after the entry of the final appealable order, and . . . not identified as an order on appeal in the notice of appeal" was "not within the scope of . . . appeal"). Our review is limited to the propriety of the judgment, circumscribed by those issues necessarily decided by the court in entering the judgment.